# CHARLESTON.

LOOMIS VS. JACKSON.

GEORGE LOOMIS, CONTESTANT, *against* JAMES M. JACKSON, RESPONDENT.

1873.
January
Term.

Decided January 7th, 1873.

## SYLLABUS.

1  Under the provisions of the Code of W. Va., chapter 6, section 13 the special court there authorized, has a limited jurisdiction. But such jurisdiction necessarily draws to it the right to hear and determine all questions touching the regularity and legality of the acts of the officers or persons conducting the election, and making and certifying the returns thereof. It may re-examine all or such parts of the election returns in said circuit as it may deem necessary, and correct errors found therein according to law and the truth. In the exercise of such jurisdiction, such court recognizes the presumption that all officers and other persons engaged in conducting elections, or in making returns and certifying the results thereof acted in accordance with the law, until the contrary shall be specifically alleged and fully proved.

**614** SUPREME COURT OF APPEALS

2. What questions were raised by a motion to quash the petition, notices, etc. of Contestant.

3. It is the intention of section 11, chapter 6 of the Code of W. Va., that every contested election provided for therein, should be commenced and ended within a comparatively short space of time; and that it was not intended to permit an incumbent to hold his office much beyond the limit of its constitutional term, and thus enable him to carry on a protracted and dilatory contest with the person certified to have been elected to that office.

4. A party who desires to contest the election of a judge of a circuit court, is required, by the 11th section of chapter 6 of the Code, to give notice, with specifications, to the party whose right is contested within sixty days next after the election. The return notice of respondent must be given to the contestant within thirty days after the service of his notice upon respondent; and all the depositions taken must be concluded within forty days after the service of the return notice.

5. By section 4 of chapter 6 of the Code, it is expressly declared that: "In contests respecting seats in the legislature if *new facts* be discovered by either party after he has given notice as aforesaid, he may give additional notice or notices to his adversary with specifications as above prescribed."

In a judicial contest, the contestant in order to ascertain and collect the facts of the case, may postpone the service of his notice of contest until the *sixtieth* day after the election, and in like manner and for a similar reason, the respondent may delay the service of the return notice until the *thirtieth* day thereafter.

6. As *new facts* or the clue to the discovery of them may for the first time be disclosed by the return notice itself, new notices with additional specifications of *new* facts discovered after the service of the original notice and specifications, and after the expiration of the sixty days, may be given by the contestant, *within the forty days* allotted for taking depositions, subject always to the limitation necessarily implied in sections 5 and 8 of chapter 6, requiring that reasonable notice of the taking of depositions shall be given to the adverse party.

7. But in every such instance, it must appear by the proper averments that the *facts* relied on to authorize the giving of the additional notice or notices, are *new facts*, and were discovered *after* the *service* of the *original notice*, and that they are such as the party could not have learned at that time by the exercise of due diligence, and that they are also *material* and *relevant* to the main question in controversy,

3. The petition, in a contest for the office of judge, should be addressed to the special court, and not to the governor, as the one filed in this case. It ought not to contain any prayer for relief beyond what the court is authorized to afford, which is confined to the duty of certifying to the governor which of the parties to the contest had been elected to the office of judge, or that no legal election therefor had been held in the circuit.

9 To invoke the authority vested in the governor by section 13, chap ter 6, it is necessary that the contestant should file with the gov- ernor a petition, with copies of his grounds of contest, notice and specifications.                            *

Such petition must remain in the governors office; without it he could have no evidence upon which to justify his official action.

10 What principles of law apply to cases of election contests.

11. Many provisions of the law, in regard to the manner of holding and conducting the election and counting the votes, and certifying the result, must be held to be *directory* only, and intended to point out to inexperienced and ignorant persons, who sometimes act as election officers, a plain, easy and direct way by which they are to attain the great end of their creation, viz: To *ascertain the true result of their election*. When the true result of a legal election has been ascertained, or can be ascertained by the officers charged with the performance of this duty, no *irregularity, mistake* or *even fraud* committed by any of the officers conducting the election, or by any other person, can be permitted to defeat the fair expression of the popular will as expressed in said election.

12. The People *v.* Cook 8 N. Y. 67, and Cooley's Constitutional Limita- tions 75, 617, cited and approved.

13. What irregularties are held to be immaterial.

It is affirmed that *no* irregularity or even misconduct on the part of the election officers, or other persons, will vitiate an otherwise legal election, unless the *result* thereof has been thereby changed, or rendered so uncertain as to make it impossible to ascertain the true result. A different rule would make the *manner* of perform- ing a public duty more important than the *duty* itself.

14. The *allegata et probata* must agree. Therefore a contestant, either in his petition or notice of the grounds of contest and specifications, must by direct averments substantially show *what was the result of the election as declared* by the returning officers, in what m-n ner and to what extent that result will be effected by the errors &c., complained of in the specifications.

And unless it further appears upon the face of the petition, notice and specifications that the result of said election will be so changed by proof of said allegations, as to overcome the majority of the person who has been declared duly elected, or to show that it is

impossible to ascertain the true result, it will be the duty of the court, on motion, to quash the same. The petition in this case no containing such averments, the question did not arise upon the petition.

15. By the provisions of chapter 3, Code of West Virginia, it was the intention of the legislature to create a judicial tribunal in conferring upon the boards of supervisors the power to call and examine witnesses, to compel the production of papers, to open, inspect, examine and count the ballots, and to make all orders deemed necessary to enable them to discharge these duties; and that their determinations upon that subject should be entitled to the force and validity of a judgment, until impeached on the grounds of mistake, corruption or fraud, precisely averred and clearly proved.
The intention was to avoid the necessity of resorting to contested elections of judges and state officers except in cases of mistake, corruption or fraud, by providing the people with a tribunal essentially and peculiarly their own, always accessible to them.

16. The legislature did not intend that a legal election should be set aside upon the ground of illegal votes received, or legal votes rejected, or any ambiguity in the ballots as to the designation of the person voted for or of the office intended.

17. All errors, irregularities and illegalities committed at the election, or existing at the time the election returns are examined by the boards of supervisors, must, in the absence of averments and proofs to the contrary, be taken and held to have been corrected by such boards, and excluded from their certificates of the correct result. From this it follows that any specification which alleges errors, irregularities, illegalities or malconduct on the part of the officers, or other persons, conducting the elections, committed before the action of the board of supervisors was had thereon, must be held insufficient, unless it is *further alleged* that such errors were carried into and formed a part of the result of the election as certified by the boards of supervisors.

18. Fraud is never to be presumed, it must be particularly alleged, especially when the act charged as a fraud may be innocent. In pleading a fraud, the pleader must by apt words allege in his pleading every act, fact and intent which necessarily enter into, and constitute that particular fraud; and these essentials must be alleged with such precision and certainty as to exclude every construction, except the fraudulent and wrongful purpose complained of; and if, from the face of the pleading, it is *doubtful* whether the allegations do in fact amount to that particular fraud or not, it is not well pleaded.

19. The rights of voters and the duties of persons conducting and certifying elections, considered and stated.

20. A constitutional convention, lawfully convened, does not derive its
powers from the legislature; but from the people. The powers of
such a convention are in the nature of sovereign powers.

The legislature can neither limit nor restrict the exercise of their
powers.

The legality of the election for officers held on the 22nd day of Au-
gust 1872, after the ratification of the new constitution and sched-
ule, is not to be called in question by any court created or contin-
ued by the provisions of that constitution. Courts sit to expound
the laws made by their government, and not to declare that gov-
ernment itself an usurpation.

21. This special court, having no common law jurisdiction, cannot per-
mit amendments of notices and specifications after the time has
passed within which the parties themselves may correct omissions,·
and supply defects.

22. The whole of Contestant's petitions, notices and specifications criti-
cally examined *seriatum* and quashed.

This is a case of a contested election arising under the
provisions of the Code of West Virginia, as found in
chapter 6, sections 2 to 14 inclusive, which are as follows:

2. Any person intending to contest the election of an-
other as senator or delegate shall, within twenty-one days
after the election in case of delegate, and within forty
days after the election in case of a senator, give him no-
tice thereof in writing, and a list of the votes he will
dispute, with his objections to each, and of the votes re-
jected for which he will contend. If the contestant ob-
ject to the legality of the election, or the qualification of
the person returned, the notice shall set forth the facts
on which such objection is founded. The person whose
election is contested as delegate shall, within fourteen
days after he receives such notice, and the person whose
election as senator is contested shall, within thirty days
after he receives such notice, deliver to the contestant a
like list of the votes he will dispute, and of his objec-
tions to each, and of the rejected votes he will claim
and if he has any objection to the qualification of the
contestant, shall specify in such notice the facts on which
the objection is founded. Each party shall append to his
notice his affidavit that the matters therein set forth, so

76

far as they are stated of his own knowledge, are true, and so far as they are stated on the information of others, he believes them to be true.

3. Where, however, such contest arises upon a special election to fill a vacancy, held at any other time than the fourth Thursday of October, the notice, with specifications and affidavit as above, shall be given by the contestant within ten days after the election, in case of a delegate, and within thirty days after the election, in case of a senator, and by the party whose election is contested, in the first case within five days, and in the second, twenty days.

4. If new facts be discovered by either party after he has given notice as aforesaid, he may give an additional notice or notices to his adversary, with specifications and affidavit as above prescribed.

5. Either party may begin to take the depositions at any time after the delivery of the original notice by the contestant. But reasonable notice of every such deposition shall be given, and such notice shall specify the names of the witness to be examined. The depositions may be taken before a justice, notary, or any officer authorized to take depositions in civil suits; and the officer before whom they are taken, shall certify and seal up the same, and endorse his name across the place where they are sealed, and address and transmit the same, by mail or otherwise, to the clerk of the branch in which the seat is contested. When the petition of the contestant is referred to a committee, the clerk shall deliver the depositions to such cammittee for examination and report.

6. Subpœnas for witnesses shall be issued by the clerk of the circuit court, or by a justice, upon application of either party; and witnesses shall be entitled to the same allowances and privileges, and be subject to the same penalties, as if summoned to attend before the said court or justice in civil suits.

7. If the contest arise respecting any election held on

the fourth Thursday of October, the parties shall finish taking depositions five days at least before the third Tuesday of January next following. But if it arise upon a special election to fill a vacancy, held at any other time, they shall finish within thirty days after the election in the case of a delegate, and sixty days in the case of a senator.

8. Neither party shall have the benefit of any deposition taken otherwise than as aforesaid, unless further time be given by resolution of the proper branch of the legislature.

9. The petition of the contestant shall be presented to the proper branch of the legislature, within ten days after its meeting, if the disputed election was held at the regular annual period; or if it was a special election to fill a vacancy, within twenty-five days after the taking of the testimony is completed.

10. If it be ascertained that an equal number of legal votes was given for the petitioner and the person returned, the senate or the house of delegates, as the case may be, in which the contest is pending, shall declare which of them is elected.

*Governor, state officers, and judges.*

11. If the election of governor, secretary of the state, treasurer, auditor, attorney general, judge of the supreme court of appeals, or judge of a circuit, be contested, the contestant must give notice, with specifications and affidavit, to the person whose election is contested, within sixty days thereafter; and within thirty days thereafter the return notice must be given to the contestant. The parties shall finish taking depositions within forty days after the last mentioned notice is delivered. The depositions shall be transmitted to the clerk of the house of delegates, to be delivered by him to the joint committee or special court hereinafter provided for. In other respects, the regulations contained in this chapter respecting contests for seats in the legislature shall be observed, so far as they are applicable.

12. When the election of governor is contested, the petition of the contestant and the depositions shall be referred to a joint committee of the two branches, for examination and report; which committee shall consist of two senators elected by ballot by that branch, and three delegates elected in the same manner by the house of delegates. The contest shall be determined by the legislature, both branches thereof sitting in joint session in the hall of the house of delegates, the speaker of which house shall preside.

13. Where the election of secretary of the state, treasurer, auditor, attorney general, or of a judge of the supreme court of appeals or a circuit court is contested, the case shall be heard and decided by a special court constituted as follows : The person declared elected shall select one, the contestant another, and the governor a third person, who shall preside in said court; and the three, or any two of them, shall meet at a time and place to be appointed by the governor, and being first duly sworn impartially to decide according to law and the truth upon the petition, returns, and evidence to be submitted to them, shall proceed to hear and determine the case and certify their de-cision therein to the governor. They shall be entitled to the same pay and mileage as members of the legislature, to be paid out of the treasury of the state ; but their compensation shall not in any case exceed forty-five dollars each, exclusive of mileage.

## Costs of contested elections.

14. The costs of every contested election shall include only the expenses of serving notices, taking of depositions and the allowances to witnesses; and shall be noted at the foot of every deposition or set of depositions by the person taking the same. If the contestant fail in setting aside the election, there shall be awarded against him the amount of such costs incurred or expended by the person who was returned or declared elected. Otherwise, each party shall pay his own costs; unless it ap-

pears that the person returned or declared elected was guilty of fraud or malpractice in the election, or in procuring such return or declaration; in which case costs shall be awarded against him in favor of the contestant. Where costs are awarded in favor of either party, the amount thereof shall be ascertained under direction of the branch, joint session, or court which decides the case, and a certificate thereof, authenticated by the signature of the presiding officer, shall be delivered to the party in whose favor they are awarded, which certificate shall have the force of a judgment, and if such costs be not paid within ten days after the date thereof, the clerk of the circuit court of the county in which the party against whom the costs were awarded resides may issue execution on such certificate upon its delivery to him in like manner, as upon a judgment of the said circuit court. But no person contesting the seat of another in the legislature shall be entitled to pay or mileage if his contest fail.

In pursuance of section 13, above said, the following order was issued by His Excellency John J. Jacob, Governor of the State of West Virginia:

EXECUTIVE DEPARTMENT,<br>
*December 16th,* 1872.

An election having been held by authority of law, in the fifth judicial circuit of this State, on the fourth Thursday in August last, for the purpose of choosing a judge of said circuit, and the governor having, by proclamation issued on the fifth day of October last, declared that at said election James M. Jackson was elected to the office of judge of the said fifth judicial circuit; and George Loomis having given notice that he contested the election of said Jackson to said office, and also that he had selected R. S. Brown of the county of Jackson as a member of the special court to hear and determine the said case of contest, and the said James M. Jackson having given notice that he had selected as

*1873.*
*January Term.*

Loomis
v.
Jackson.

a member of said court Samuel Woods of the county of Barbour, the governor doth hereby select and appoint Benjamin H. Smith of the county of Kanawha to be a member of, and to preside over the said special court. And the governor doth order and direct that the said special court constituted, as aforesaid, of the said Benjamin H. Smith, president, and the said R. S. Brown and Samuel Woods, orany two of them, meet on the twenty-eighth day of December eighteen hundred and seventy-two at the capitol in the city of Charleston; and that they, being first duly sworn impartially to decide according to law and the truth upon the petition, returns, and evidence submitted to them, proceed to hear and determine the contested case aforesaid of George Loomis against James M. Jackson, and certify their decision therein to the governor.

And the governor doth further direct that the said special court certify the number of days each member thereof shall have been engaged in the trial of said case, and the number of miles necessarily travelled by him in coming to and returning from the place of meeting; and that the said special court in all respects proceed according to law; for all of which this shall be their sufficient authority.

The secretary of state is authorized and directed to make out and transmit to each member of said special court a copy of this order.

By the Governor:          (Signed,) JOHN J. JACOB.
(Signed,) JOHN M. PHELPS.
                Secretary of State.

Under the ordinance and schedule of the Constitutional Convention of this State, adopted in April 1872, an election was held on the 22nd of August 1872, in the counties composing the fifth judicial circuit, the result of which, as declared by the boards of supervisors of those counties, was the election of the Hon. James M. Jackson the respondent.

1873.
January
Term.

Loomis
v.
Jackson.

On the 5th of October 1872, the Contestant served a notice of contest on the Respondent.

The notice of contest consisted of three *grounds* and *fourteen* specifications, in the words and figures following :

JAMES M. JACKSON *Esquire.*

SIR : You are hereby notified that I shall contest your election to the office of judge of the fifth judicial circuit, composed of the counties of Tyler, Pleasants, Ritchie, Wood, Wirt and Calhoun, in the State of West Virginia, which election was held on the fourth Thursday in August 1872.

### THE GROUNDS OF CONTEST ARE,

1st. That I was a candidate for the said office of judge in said circuit, at the election aforesaid, and was voted for as such ; that I received a higher number of votes cast at said election for said office than you did, and am therefore entitled to have the same allowed, declared and certified to me, by the several boards of supervisors of the counties aforesaid, according to the true vote that I did receive in said counties respectively for the office aforesaid, and to be commissioned accordingly; which has not been done.

2nd. That in divers precincts in said counties, there was such malconduct at the respective voting places therein (more particularly set forth in the specifiations following) on the part of the officers conducting the election, and such interference by others, suffered at the polls as to preclude a fair expression of the will of the legal voters, then and there voting, and offering to vote, as to render it impossible to determine at such voting places, who was the choice of said voters for said office of judge. Notwithstanding which the election officers then and there acting, and whose duty it is, and was, to declare the result of said election, have declared the same in favor of said James M. Jackson, wrongfully and to my injury and prejudice in the premises.

3rd. That at the voting place in Parkersburg township, Wood county, to-wit, at the Court House in Parkersburg, when the ballots were being counted by the inspectors and clerks in the presence of the supervisor, after the polls were closed, one of the inspectors in taking the ballots from the ballot box (in two instances at least if not more) found two or more ballots folded or rolled together, and the names thereon were the same, and my name was on each, as the person voted for, for judge of the said circuit; and instead of destroying all but one of said ballots in each instance, according to the law in such cases made and provided, all of the ballots so found folded or rolled together were destroyed, and none of them counted; and they were so destroyed and not counted at your express direction, you being then and there present, cognizant of, sanctioning and directing the same to be done. .

I therefore claim, that assuming the result of the election to be in accordance with the certificates of the several boards of supervisors throughout said circuit (after the same are corrected of the errors hereinafter specified) that the unlawful destruction of the ballots as above stated, would of itself change the result of the election for said office of judge.

The following are the specifications of facts and of points relied upon to sustain the above stated grounds of contest, which facts are given upon information derived from others, except where it is otherwise expressly stated.

### SPECIFICATION 1.

That in Pleasants county aforesaid, the board of supervisors certify (touching said election) that in said county, for judge of the 5th judicial circuit, James M. Jackson received three hundred and eighty seven votes, and George Loomis received three hundred and thirty-five votes; whereas in fact, at the voting place in Grant township in said county of Pleasants I, (the said George

Loomis) received at least five votes more than I am there certified to have received, and that said votes were not counted to me, as they properly should have been; and that the poll books, tally sheets and ballots for that voting place show this fact.

I shall, therefore, claim the right to have the same properly examined into, and to take proof thereof. Also that similar mistakes occurred in the count of ballots at one or two other voting places in Pleasants county to my prejudice, of which I am not now advised with sufficient accuracy to particularly specify but of which, when I am advised, I shall give you notice if required, and claim the right to have the same properly examined into, and take the proof as fully as I might if the same was now herein specifically inserted.

SPECIFICATION 2.

That at the voting place in McKim township in the said county of Pleasants, while said election was being conducted, and before all the ballots were counted, the ballot box then and there used was opened, and its contents examined, and nineteen ballots more or less were taken out of said ballot box by one Hanson Pointer, (or by some other person whose name to this Contestant is unknown,) a person not then and there an election officer, and having no legal authority to do so; and the said election was in other respects wholly illegal in this, to-wit: That the supervisor then and there conducting said election, to wit: One Simpson Jones, acted in the two-fold character of clerk and of supervisor of said election, contrary to law. And the said election at that place was conducted generally, "In such a manner as to repel the presumption that the ballots were not tampered with," and consequently the poll at said voting place is invalid, illegal and void. Therefore, I shall claim that the "returns of the votes" then and there taken at said voting place, so far as they relate to the office of judge, "shall

77

1873.
January
Term.
───────
Loomis
v.
Jacks

be set aside" for the causes herein stated and other illegalities.

## SPECIFICATION 3.

That in Calhoun county, aforesaid, the board of supervisors certify (touching said election) that in said county for judge of the 5th judicial circuit, James M. Jackson received four hundred and sixty-nine (469) votes, and George Loomis received one hundred and eighty-six (186) votes:

Whereas, in fact you did not receive four hundred and sixty-nine votes as certified as aforesaid in the county of Calhoun, but that said certificate was wrongfully made by the said board as to the number of votes you were supposed to have received in that county in this, to-wit:

That in Washington township in Calhoun county, you received but one hundred and ten votes, and yet you are erroneously allowed and certified by the inspectors of said township to have received one hundred and *twelve* votes; or *two* more votes than you did in fact receive.

That in Sherman township in Calhoun county, you received but eighty-eight votes, and yet you are erroneously allowed and certified by the inspectors of Sherman township to have received *ninety-eight* votes, or *ten* more votes than you did in fact receive; which two numbers added make *twelve* votes that the board of supervisors have erroneously counted in, and made a part and parcel of the aforesaid number of 469, and certified by them as being the vote that you received in said county.

I shall, therefore, claim that this error of twelve votes shall be deducted from your poll in Calhoun county.

And for further specification in this particular I claim that, in Washington township in Calhoun county, I received thirteen votes. And yet the inspectors of said township allow and certify me to have received in said township only *nine* votes, or *four* votes less than I did in fact receive. That the board of supervisors of said county in certifying the number of votes that I received

in that county at 186, as above set forth, did not include in that number the aforesaid four votes. I shall, therefore, claim to have my poll and the certificates aforesaid corrected in these particulars.

### SPECIFICATION 4.

That in Sheridan township in the county of Calhoun, at the voting place therefor, on the said day of election and before the poll was closed, the ballot box then and there used was suffered to be opened several times, and the ballots handled and examined and tampered with by persons having no authority to do so, and that other misconduct and irregularities were practiced to such an extent as to invalidate the pole of that precinct. Wherefore, I shall claim to have the poll set aside.

### SPECIFICATION 5.

That at Petroleum, a voting place in Grant township in the county of Ritchie aforesaid, the persons who actually conducted said election, and received the greater part of the ballots, and who decided upon the legality thereof, and counted and disposed of them or a greater part of them were persons other than the legal officers for conducting said election at that place ; and that said other persons thus acting were not even sworn, and that other misconduct and irregularities then and there occurred, rendering said poll illegal and invalid.

Wherefore, I shall claim to have the same set aside.

### SPECIFICATION 6.

That at the voting place for Burning Springs township in Wirt county aforesaid the following named persons, to-wit: Jasper Gibson and George Morgan did then and there cast their ballot in said election for you, for the said office of judge, contrary to law; they nor neither of them being at that time legal voters and entitled to vote at said election, because of their being minors under t h age of twenty-one years, and because they had not resided in said county and township the length of time required by law. I shall, therefore, claim that your poll at

that place be diminished by a number corresponding to the number of illegal votes which were then and there cast for you as herein stated.

### SPECIFICATION 7.

That the following named persons, minors and non-residents of this State, and not entitled to vote at said election at Parkersburg aforesaid, to-wit: Joseph Cook and Michael Powers, minors, and the latter a non-resident, also George Roberts a minor and non-resident, and Charles Gambrill a non-resident and M. Hickey and Taylor Sheets non-residents of Parkersburg township, did contrary to law and in violation of law, at the voting place in Parkersburg, at the said election, cast their ballots for you, for said office of judge, and that the same were received and counted for you. I shall, therefore, claim that your poll at that place be diminished by a number corresponding to the number of illegal votes which were then and there cast for you as herein stated.

### SPECIFICATION 8.

I state on my own knowledge that you did, at the voting place in Parkersburg township in Wood county, to-wit: at the Court House in Parkersburg—while the ballots were being then and there counted, after the polls were closed and before the count was concluded, take hold of, handle, displace and examine a great number of said ballots before the same had been fully counted by the proper election officers. I shall claim that such acts are improper, unwarrantable and illegal on the part of any bystander, and more especially on the part of a candidate voted for at the place where such acts occurred; as leading to well grounded suspicious of unfairness, and that in this case they operated to my prejudice; and I shall further claim that your entire poll, cast in said election at Parkersburg, be set aside in consequence.

### SPECIFICATION 9.

That] divers persons, not officers conducting said election, but bystanders, having no legal right to do so,

yourself among and acting with the number, after the polls were closed at Parkersburg aforesaid, and while the ballots cast at said election were being counted, and before the count was concluded did handle, displace, and examine a great number of said ballots before the same had been fully counted by the proper election officers. Wherefore I shall claim that your poll at said voting place be set aside.

## SPECIFICATION 10.

That after said polls at Parkersburg aforesaid were closed, and the ballot boxes then and there used were opened by the inspectors, preparatory for a count, the ballots were not taken out one at a time in the manner prescribed by law; but on the contrary thereof, the ballots, or a greater part if not all of them, were unlawfully taken out of the ballot boxes then and there used, culled and separated into different parcels, and laid out upon a table, and this was done previous to "One of the inspectors reading from said ballots the designation of the offices to be filled," as required by law, thereby increasing the opportunities for said ballots to be tampered with; and this was done by your express direction.

I shall, therefore, claim that the vote which you are certified to have received at Parkersburg as aforesaid, for the said office of judge, to wit: 665 be deducted from your poll.

## SPECIFICATION 11.

That at the voting place in Parkersburg precinct, Wood county, to wit: at the court house in Parkersburg, when the ballots which had been cast at said election, were being counted by the inspectors and clerks in the presence of the supervisor, after the polls were closed, one of the inspectors in taking the ballots from the box in two or more instances, "Found two or more ballots folded or rolled together;" and "The names thereon were the same; and my name was on each and every of said ballots, as the person voted for, for judge of the

said circuit court and instead of destroying all but one of said ballots, in each instance of like occurring, according to the law in such cases made and provided—all of the ballots so found folded or rolled together, were destroyed, and none of them counted; and they were so destroyed, and none of them counted at your express direction; you being then and there present, cognizant of, sanctioning and directing the same to be done.

That after as many ballots were counted as were equal to the number of votes entered upon the poll-books, there was an excess of at least three ballots remaining in one of the ballot boxes, with my name on each of said ballots, as the person voted for, for judge as aforesaid; which facts you knew, and directed said three ballots to be destroyed; and at your direction they were destroyed, and not counted for me as they might have been, but for your own action in the premises, inasmuch as the said three particular ballots would not necessarily have been the three ballots remaining in excess of the number which was equal to the number of votes entered upon the poll books, had it not been for the illegal manner of taking the ballots from the box at your express direction; as hereinbefore stated.

I shall therefore claim, that assuming the result of said election to be in accordance with the certificates of the several boards of supervisors throughout said circuit, (after said result is corrected of the errors set forth in the 1st and 3rd of the foregoing specifications) that the illegal destruction of the ballots as in this specification stated, would of itself change the result of the said election. Wherefore I shall claim that the vote which you are certified to have received at Parkersburg aforesaid, for the said office of judge, to-wit: 665 be deducted from your poll.

### SPECIFICATION 12.

That after the ballots which had been cast in said election at the various voting places in the county of Wood aforesaid, and after they had been respectively en-

closed in an envelope, and sealed up by the inspectors at each and every of said voting places, and after the same were endorsed according to law, and after the inspectors of the said several voting places had delivered the ballots so sealed up to the clerk of the board of supervisors of their said county, to wit; on Wednesday the 28th day of August 1872, at the court house in Parkersburg aforesaid, and before the supervisors of said county, then and there convened, had examined the several inspectors' certificates laid before them by their clerk, you did cause the sealed package of ballots, containing the ballot cast at Parkersburg, on the day of election aforesaid, to be broken open and examined, and the ballots therein contained to be handled and misplaced, without a majority of the said board of supervisors being present at the time and place when and where they were so broken open, examined, handled and misplaced; but on the contrary thereof, there were only two of the supervisors present when and where said actings and doings took place, to wit; Wm. H. Stallman and John W. Davis, who in conjunction with yourself, and at your instance, and by your procurement, did unlawfully break open, the sealed package of ballots which contained all the ballots cast at said election at Parkersburg for said office of judge to wit; between one and two thousand ballots; and after you had so handled, examined and meddled with the same, you left them in a loose and unsafe condition, and they were not again sealed up along with the original envelope in another envelope; all of which actings and doings transpired in my absence, and without my having notice thereof, and without my consent; and in consequence of said unlawful doings I have been injured and prejudiced in the premises. The said two supervisors and yourself n counting the ballots as aforesaid, did ascertain and find the fact to be, that you received a less number of votes for the said office of judge than the inspectors of Park-

ersburg township had certified for you, although the said two supervisors reported to the full board, "That the certificate of the inspectors is correct."

I further charge and specify, that one George W. Neale, a relative, political and partizan friend of yours, was a candidate in Parkersburg township for the office of justice, and running on the same ticket with yourself; that one Ellis Mather was an opponent of said Neale for said office, and was running on the same ticket with myself ; that the inspectors certified that said Neale received for said office of justice 629 votes, and that Mather received 643 votes, or a majority of 14.

That afterwards, to wit : after the package of ballots had been broken open, as above stated, said Neale gave notice that he would contest the election of said Mather; whereupon, such action was had that a re-count of their vote was ordered which being done, resulted as follows. George W. Neale received 634 votes, and Ellis Mather received 621 votes, thus differing from the inspectors certificate, and giving *Neale* a majority of 13 votes.

That afterwards, to-wit: on the 4th of September 1872, the board of supervisors, not satisfied with said action proceeded to ascertain and declare the true result: accordingly such action was had that a re-count of the vote between said Neale and Mather by the board resulted as follows; that Neale received 635 votes, and Mather 630 votes, or 5 *less* than Neale, thus differing from all former counts, and showing that the ballots aforesaid had been tampered with. I therefore-charge, and shall claim that the breaking of the package of the Parkersburg ballots as aforesaid, at your instance, amounted to or resulted in a tampering with said ballots to my prejudice, by reason whereof such confusion has been occasioned with said ballots that I am forever precluded from ascertaining the very truth as to the result of the vote for judge in Wood county; all of which more fully appears by the record of the board of supervisors of Wood county, touching the matter of the re-count of the votes herein referred to.

A copy of which record will be furnished to be used as evidence in the trial of this contest.

I shall, therefore, claim that your action in the premises invalidates the vote of Wood county, which you were supposed to have received, to-wit: 1877, and that the same shall be deducted from your poll; or if the legal effect of such action is not to invalidate your *whole* vote in said county, I shall demand to have the vote which you are certified to have received in Parkersburg aforesaid, for the office of judge, to-wit: 665 deducted from your poll.

### SPECIFICATION 13.

That at a voting place in Walker township, to-wit: at Volcano in Wood county aforesaid, the officers then and there conducting said election wholly failed and omitted to have entered by the clerks then and there acting the contents of the ballots as they were read on tally papers, under the supervision of the supervisor and inspectors, by suitable marks made opposite to, or under the name of each person voted for, so as to show the number of votes received by every person for any office to be filled, and especially for the office of judge for the 5th circuit aforesaid, as required by the 59 section of chapter 3 of the Code of West Virginia.

Therefore I shall claim that the "returns of the votes" then and there taken at said voting place, so far as they relate to the office of judge aforesaid, "shall be set aside" for the causes herein stated and for other illegalities.

### SPECIFICATION 14.

That at Spring Creek, a voting place in Wirt county, aforesaid, the polls were closed on the day of said election at four o'clock p. m., and not kept open until sun down of that day, in consequence whereof numbers of voters were prevented from voting at that place, to my prejudice in the premises; and other irregularities then and there occurred, to-wit: that during the time the vote was being then and there taken, the ballot box was on

three different times opened, and the vote counted; all of which was to my prejudice in the premises.

Wherefore I shall claim to have the returns of the votes then and there taken set aside.

All of which acts and doings, irregularities and illegalities complained of in the foregoing grounds of contest and specifications were to my injury and prejudice in the premises. Wherefore I claim to have the same legally enquired into and corrected, verily believing that when the same is done I will be shown to have been legally elected to the office of judge of the 5th judicial circuit at the election aforesaid; and I shall therefore claim my right to be commissioned as such.

Respectfully &c.

GEORGE LOOMIS.

STATE OF WEST VIRGINIA.

WOOD COUNTY, to-wit:

I, George Loomis, hereby declare that the matters set forth in the forgoing grounds of contest and specifications so far as they are stated on my own knowledge are true, and so far as stated on the information of others I believe them to be true.

GEORGE LOOMIS.

Subscribed and sworn to before me, a Notary Public for said county, this 5th day of October 1872.

J. S. NIGH,
Notary Public.

Served a copy of the within notice, grounds of contest and specifications on James M. Jackson, by delivering the same to him in person on the 5th day of October 1872.

W. J. HILL.
Sheriff Wood Co.

The Respondent served his answer and counter notice upon the Contestant within the time provided by law; which are in the words and figures following:

To George Loomis, *Esq.*

You are hereby notified that I shall rely upon the facts and proofs hereinafter set out to shew that I was legally elected to the office of judge of the 5th judicial circuit, composed of the counties of Tyler, Pleasants, Ritchie, Wood, Wirt and Calhoun in the State of West Virginia, at the election held on the fourth Thursday in August 1872.

First. "I was a candidate for the said office of judge in said circuit at the election aforesaid, and was voted for as such, and I received a higher number of votes cast at said election for said office than you did;" and that the several boards of supervisors of said several counties composing said circuit, having met on the 28th day of August 1872, as required by law "To carefully and impartially ascertain the result of said election in their said several counties," and to make the proper certificates of such result, did carefully and impartially ascertain the result of the election for judge of said circuit as aforesaid, and did make the certificate of such result as required by law, and did transmit to the governor of the State of West Virginia a certificate in due form of law of such result in each and every county composing said circuit, from which said certificates so made as aforesaid, it does appear, that I, the said James M. Jackson, did receive the highest number of votes cast at said election for the office of judge of said circuit, and that the same was duly allowed, declared and certified to me, by the said several boards of supervisors according to the true vote that I did receive, for the office aforesaid, and for which I shall claim to be commissioned accordingly; and you did not receive a higher number of votes cast at said election for said office of judge than I did, and therefore you are not entitled to have the same allowed, declared and certified to you, by the several boards of supervisors of the counties aforesaid. Which said several original certificates of the

SUPREME COURT OF APPEALS

said boards of supervisors of the several counties composing said circuit, are on file in the office of the governor of the State of West Virginia; which said several certificates are hereby referred to and relied on as evidence of such facts.

Second. That the governor of the State of West Virginia aforesaid did, according to the statute in such case made and provided, ascertain and make proclamation that I, the said James M. Jackson, was at the election aforesaid duly elected judge of the said judicial circuit composed of the counties aforesaid; which said proclamation now on file in the proper office is hereby referred to, and relied on as evidence of such fact.

Third. That as to the said ground of contest mentioned in your notice, alleged to be the second, and in which you aver that there "Was malconduct at the respective voting places in said several counties on the part of the officers conducting the said election, and such interference by others suffered at the polls as to preclude a fair expression of the will of the legal voters then and there voting and offering to vote." I, the said James M. Jackson, deny in whole and in part, that there was any such malconduct or interference, as you have averred in your said second ground of contest, as to preclude a fair expression of the legal voters then and there voting and offering to vote, or which rendered it impossible to determine at such voting places who was the choice of said voters for said office of judge. And I, the said James M. Jackson, further aver that the said election officers fairly and properly declared the said election in my favor, and not wrongfully nor to your injury and prejudice in the premises as you have alleged.

That as to the said third ground of contest mentioned in your notice, I, the said James M. Jackson, deny that the facts, statements and circumstances set up therein are true—that it is not true, as I am informed and believe, that at the voting place in Parkersburg, to-wit; at the court house, that one of the inspectors in taking the ballots from

the ballot box, after the polls were closed, in any instance found two or more ballots folded or rolled together on which the names were the same, and on which your name was on each of said ballots respectively as the person voted for as judge of the said circuit, and that the same were destroyed in the manner you have alleged, in your third ground of contest. And I, the said James M. Jackson, do expressly aver that if any such ballots were destroyed, and not counted as you allege, that they were not so destroyed and not counted by my express direction, nor was I cognizant of, sanctioning or directing the same to be done. And I aver that even if the matters and things by you in said third ground of contest alleged are true, they would not of themselves change the result of the election of said office of judge.

That as to the matters contained in specification 1, mentioned in your notice, I, the said James M. Jackson, as to the charge in relation to the vote of Grant township in the county of Pleasants, do say that I am not advised as to the truth of the facts alleged in relation to the said vote in said township of Grant; but call for full and strict proof of the same ; and as to the residue · of said specification, the same is too vague and indefinite for me to reply thereto, except that the same is not true so far as I am informed and believe.

And as to specification 2, the matters and things therein contained are not true, as I am informed and believe. And I aver that the said election at said voting place in McKim township in Pleasants county was fairly and impartially conducted, and that the return of the votes taken at said voting place, so far as they relate to the office of judge aforesaid, should be counted.

And as to specification 3, mentioned in your notice, that so far as the matters contained therein, in reference to the vote cast at Sherman township, Calhoun county, that while the tally sheets shew that I received eighty-eight votes, yet the officers conducting said election at the voting place in said township of Sherman in said

county of Calhoun, did certify that said election was fairly and impartially held according to law, and that the result thereof was as follows: For the office of judge aforesaid, that I, the said James M. Jackson, received ninety-eight(98)votes, and that you, the said George Loomis, received nine (9) votes for the said office of judge; which said certificate of the returns of said election, held at the voting place in Sherman township, in said county of Calhoun is relied on.

And as to the return of the votes cast at the voting place in Washington township in said county of Calhoun, the matters and things therein alleged are not true and you are referred to specifications No. 29 and 30 of this, my return notice, for a more specific statement of matters of fact in relation to said vote cast in said Washington township.

And as to specification 4, the matters and things therein contained are not true, as I am informed and believe. And I aver that even if they were true as therein alleged, it would not invalidate the returns of the election held at that voting place.

And that as to specification 5, mentioned in your said notice, the matters and things therein contained are not true, as I am informed and believe. And I aver that even if they were true, they would not render illegal and invalid the return of the election held at Petroleum, Ritchie county, W. Va.

And that as to specification 6, mentioned in your said notice, I am not informed of the matters and things therein contained; and demand strict and legal proof thereof.

And that as to specification 7, mentioned in your said notice, I am not informed as to the truth of the same, and demand strict and legal proof thereof.

And as to specification 8, the matters and things therein contained are not true as alleged. And I aver, that I, the said James M. Jackson, did not take hold of, handle, displace and examine a great number of said ballots, be-

fore the same had been counted by the proper officers. And I aver that I did no acts that were improper, unwarrantable or illegal on my part, which would lead to well grounded suspicions of unfairness, or which in this case did operate to your prejudice. And I aver that my conduct at the said election in no particular did illegally or fraudulently operate to your prejudice; and, therefore, that the entire poll cast for me at said election should not be set aside and not counted.

And as to specification No. 9, mentioned in your said notice, the matters and things therein contained are not true in manner and form as therein alleged; and that even if the same were true, it would not invalidate my poll received at said election at said Parkersburg voting place.

And as to specification No. 10, mentioned in your said notice, the matters and things therein contained are not true in manner and form as therein alleged; and that even if the same were true, it would not invalidate my poll received at said election at said Parkersburg voting place. And I aver that the manner in which said ballots were counted, was not done by my express direction as you allege.

And as to specification No. 11, mentioned in your said notice, the matters and things therein set out are not true as therein alleged. And I refer you to my answer to your second ground of contest as a further statement upon my part to so much of said specification as refers to the destruction of ballots found folded and rolled together. And as to the residue of said specification, I aver that I was not present at the time the ballots were counted out and concluded and it was ascertained that there was an excess of three ballots over and in excess of the names entered on the poll books; nor did I give any directions in regard to their destruction; which facts you knew, or could have known upon proper inquiry at the time you prepared said specification charging that said

1873.
January
Term.

Loomis
v.
Jackson.

ballots were destroyed by my express direction. And, therefore, the vote certified to me as having been cast in my favor at Parkersburg aforesaid, for the said office of judge, to wit: 665 should not be deducted from my poll as claimed in said specification.

And as to specification No. 12, mentioned in your said notice, the matters and things therein contained are not true in manner and form as therein alleged, and you well knew the same to be not true as therein stated. I aver that I did not break open the sealed package of envelopes, or cause them to be broken open as therein referred to; that I did not handle, meddle with and misplace the same or any of them; and you well knew that all that was done at the time referred to, was by virtue of the authority of the board of supervisors. All of which will appear by a certified copy of their proceedings in regard to a recount of the ballots cast at Parkersburg for the office of judge, hereby referred to, and shall be used as evidence on the trial of this contest. And I aver that nothing was done by me in the premises which should "Invalidate the vote which I received in Wood county, to wit: 1877, and that the same should be deducted from my poll, or if that cannot be done, that the vote I am certified to have received in Parkersburg aforesaid, for the office of judge, to wit: 665 should be deducted from my poll;" but on the contrary, I did nothing but what I was warranted in doing by the law in such a case, and am, therefore, entitled to have all said votes counted in my favor.

That in regard to specification No. 13, the matters and things are not true as therein are alleged, as I am informed and believe; but that the officers conducting said election at Volcano in Walker township, did not wholly fail and omit to have entered by the clerks, then and there acting, the contents of the ballots as they were then and there read on tally papers, under the supervision of the supervisor, by suitable marks made opposite to, or under the name of each person voted for, so as

to shew the number of votes received by every person for any office to be filled, and especially for the office of judge of the 5th circuit aforesaid, as required by the fifty-ninth section of chapter three of the Code of West Virginia; but on the contrary such tally sheets were kept as required, and therefore the returns of the votes, then and there taken, at such [voting place should not be set aside for the causes therein stated, and for other irregularities; but I shall rely upon said return of said votes in my favor.

And as to specification No. 14, as to the matters and things therein specified, I am informed and believe they are not true; and even if they were true, I claim that it would not invalidate the said election at said voting place, at Spring Creek aforesaid, and the votes then and there taken set aside. I shall therefore rely upon the return of the votes cast for me at the said election for the office of judge aforesaid, at the voting place in Spring Creek, in Wirt county aforesaid.

And I further give you notice, and specify the following matters and things which will be relied on by me, as shewing that you are not elected to said office of judge of said 5th judicial circuit; and that you did not receive a majority of the votes cast at said election for said office; and that you did not receive a higher number of votes than I did; and also giving you a list of votes cast for you at said election for said office, which votes I will contest, and of my objections to each.

First. I charge that at the election places in Ritchie county herein named, to wit: at Cairo in Grant township, at Irelands in Union township and Smithville in Murphy township, the names entered on the poll books were not, as soon as possible after the polls were closed, counted by the inspectors and clerks in the presence of the supervisor, and the number thereof set down in words at length, at the foot of the lists, and then signed by the inspectors and clerks as required by law; in order

79

to prevent fraudulent additions to the votes legally cast at said elections; as will appear by an inspection of the poll books for said several voting places, now on file in the office of the clerk of the board of supervisors of said county of Ritchie. Wherefore, I shall claim to have the whole poll cast at said several voting places set aside and excluded from the count of the vote for the office of judge as aforesaid; which being done will give me 578 votes, and you 497 votes, and giving me a majority of 81 votes in said county of Ritchie, instead of a majority of 72 votes in your favor as certified by the board of supervisors of said county of Ritchie. And I shall therefore claim to have said certificate corrected accordingly.

Second. I charge that the said election for said Cairo voting place in Grant township in said county of Ritchie, was not held at the place specified by law for holding elections; but was held at the house of one Ormsby, in the town of Cairo, a place at which the elections for said voting place had not theretofore been held, and without ever having been altered or changed to said house by authority of law; the house of said Ormsby not having been prescribed by law as the place for holding said election. Wherefore, I claim that the votes cast at Cairo in Grant township in said county, shall be set aside and excluded from the count of the vote for the office of judge in said county of Ritchie; which being done, will give you a majority of 54 votes in said county over me, instead of 72 votes as returned; and thereby increasing my majority in said circuit to 38 votes.

Third. I charge that the said election for said Irelands voting place in Union township in said county of Ritchie, was not held at the place specified by law for holding elections for said voting place, to wit, at "Irelands," to wit, the house of Thomas Ireland, in said township and county; but was held at an out house or shed some distance from said "Irelands." Wherefore, I claim that the votes cast at said voting place, purporting to be at "Ire-

1873.
January
Term.

Loomis
v.
Jackson.

lands" in Union township, shall be set aside and excluded from the count of the vote for the office of judge in said county of Ritchie ; which being done will give me 27 majority in said county over you, and a majority in said circuit of 119 votes.

Fourth. I charge that the officers conducting the election at the court house in the township of Union in said county of Ritchie, did not, as soon as possible after the polls were closed on said election day, proceed to count the names entered on the poll books; nor did they then proceed to perform any of the duties required of them by the 59th section of chapter 3 of the Code of West Virginia; but on the contrary, they deposited the ballot box containing the ballots, without locking or sealing the said box, in the office of the clerk of the circuit court of said county of Ritchie; the said clerk being a candidate on the same ticket, to wit, the Republican or Opposition ticket, with you, the said George Loomis; the said ballot box containing said ballots, not remaining in the immediate custody of the supervisor and inspectors, or any one of them, after the polls were closed; but said ballot box containing said ballots, was allowed to remain out of their custody, and in the clerks office aforesaid, from sun down on the day of election until after breakfast the next day, a period of about twelve hours, without warrant of law and without any necessity whatever; but with negligence and misconduct amounting to fraud. And I charge, upon my information and belief, that the said ballot box at said voting place in said township, so containing the ballots cast thereat as aforesaid, during said space of time, to wit, twelve hours, did not remain in the immediate custody of the supervisor and inspectors of said election so held in said township, or in the immediate custody of any one of them with the consent of the others. And I further charge, that said ballot box of said voting place in said township, being so left as aforesaid, during the time aforesaid, was not carefully sealed so that it could not be opened, or any ballot taken

therefrom, or entered therein, without breaking the seal; and that said supervisors and inspectors did not, nor did any or either of them, write their names or name across the places where it should be sealed when it was so placed as aforesaid, as they were required by law so to do. Wherefore, I shall claim to have the votes cast at said election at the court house of said Ritchie county, set aside and excluded from the count of the vote for the office of judge in said county of Ritchie; which being done will give me 54 majority over you in said county, and in said circuit a majority of 146 votes.

Fifth. I charge that the officers conducting the election at "Irelands" in the township of Union in said county of Ritchie, did not, as soon as possible after the polls were closed on said election day, proceed to count the names entered on the poll books ; nor did they proceed to perform any of the duties required of them, by the 59th section of chapter 3 of the Code of West Virginia. And I further charge that at noon or dinner time, on the day of the election, the said officers of said election of said voting place at Irelands, did place the ballot box containing the ballots, without locking or sealing the said box, on the banister of the porch, or some other support of the out house, shed or building, where said election was held, and did suffer the said box containing said ballots, to remain for the space of one hour or more without being sealed, locked or written upon as required by law ; and without being kept where it might be seen by the voters voting at said voting place; and without the said box remaining in the immediate custody of the supervisor and inspectors or any one of them, with the consent of the others, without warrant of law, without any necessity whatsoever; but with negligence and misconduct amounting to fraud. Wherefore, I shall claim to have the votes cast at said voting place at "Irelands," set aside and excluded from the count of the vote for the office of judge in said county of Ritchie,

1873.
January
Term.

Loomis
v.
Jackson.

which being done will give me 27 majority in said county, and a majority in said circuit of 119 votes.

Sixth. I charge that the officers conducting the election in Smithville in Murphy township in said county of Ritchie, to-wit, the inspectors, or the supervisor and one inspector, did not, as soon as there sults were ascertained, of the election held at said voting place, sign two certificates thereof, to the effect prescribed in the 61st section of chapter 3 of the Code of West Virginia; nor did they sign two certificates corresponding in all respects with each other, and containing complete returns of the polls taken at said place of voting for every office to be filled; and more especially for the office of judge of the 5th judicial circuit; but the said inspectors, or the supervisor and one of the inspectors, wholly failed and neglected so to do, and that therefore there are no legal and proper returns of the result of the election held at said voting place. Wherefore, I shall claim to have the votes cast at said election at Smithville in Murphy township in said county of Ritchie, set aside and excluded from the count of the vote for the office of judge in said county of Ritchie; which being done, will give you a majority of 36 votes in said county over me instead of 72 votes as returned, and thereby increasing my majority in said circuit to 56 votes.

Seventh. I charge that the following persons voted for you in said county of Ritchie, and that the same were received and counted for you at the several voting places set opposite their names, and that said votes were illegal and ought not to be received and counted for the reasons stated herein : ·

At Irelands voting place, Martin M. Mitchell voted for you. He was a minor under the age of twenty-one years, and therefore not entitled to vote.

At the court house voting place in said county, John W. McDaniels voted for you he being at the time a non-resident of Union township in which said voting place is, and therefore not entitled to vote therein.

And also that at said court house voting place in said township, Zachariah Pierpoint and Joseph Wey voted for you; they at the time being minors under the age of twenty-one years, and, therefore, not entitled to vote. I shall, therefore, claim to have your majority in said county diminished by four votes, and my majority in the circuit increased four votes, making my majority in said circuit 24 votes.

Eighth. I charge that at the voting place in Tucker township in Wirt county, the officers who opened the polls, and proceeded to receive the votes cast at said voting place, were not permitted to continue to act as such; but that one John Fisher who was sworn as an inspector, did act as such for a good space of time, and did receive the votes of those who offered to vote at said voting place; and after acting as such he was displaced, and one George Stephens substituted in his stead, and continued to act as such until the polls were closed, and that said Fisher did not certify the result of said election. That at said voting place, the polls were closed on the day of said election at about 4 o'clock P. M., and not kept open until sundown of that day; that the ballot-box was opened at sundry times during that day, and the vote counted and that the whole vote was counted before sundown of said day, and the polls closed before that time; and other irregularities then and there occurred to my prejudice, in this, that numbers of voters were prevented from voting at that place, who would have voted for me had not such irregularities occurred; all of which was to my prejudice in the premises, in this, that you, the said George Loomis, received a majority of the votes cast at said voting place. Wherefore, I shall claim to have the said poll set aside and excluded from the count of the votes for the said office of judge in said county of Wirt; which being done will give me a majority in said county of 141 votes, and a majority in said circuit of 33 votes.

Ninth. I charge that the following persons voted for you in said county of Wirt, and that the same were received and counted for you at the several voting places set opposite their names, and that said votes were illegal, and ought not to be received and counted for the reasons stated herein:

At the court house in Elizabeth township in said county of Wirt, Frank McCoy, Ellis Williams, Jesse Vernon, Thomas Hickman, jr. and Samuel Redding voted for you; each one of said votes is illegal in this, that the persons casting the same were minors, under the age of twenty-one years, and therefore not entitled to vote.

That at the same voting place, to-wit: at the court house aforesaid, Thomas Laylong voted for you; said vote is illegal in this, that the said Laylong was a foreigner, born out of the United States of America, and had not been naturalized according to law, and therefore was not a citizen of the United States, or of the State of West Virginia, and therefore not entitled to vote therein.

That at the voting place in Burning Springs township in said county of Wirt, D. S. Fulkerth voted for you; said vote is illegal, in this, that said Fulkerth was not a resident of Wirt county or Burning Springs township; but was a resident of Wood county in the State of West Virginia, and therefore said Falkerth was not entitled to vote at said voting place in Burning Springs township in said county of Wirt.

That at the voting place at Newark in Newark township in Wirt county aforesaid, G. V. L. Grant, voted for you; said vote is illegal, in this, that said Grant was a nonresident of Wirt county and Newark township; but was a resident of Wood county aforesaid, and therefore said Grant was not entitled to vote at said voting place in Newark township in said Wirt county.

That at the voting place in Spring Creek township in said county of Wirt, Benjamin G. Hopkins and Abram E. Clark voted for you; said votes are illegal, in this,

that said Hopkins is a minor, under the age of twenty-one years, and therefore not entitled to vote; and the said Clark was and is a non-resident of said Spring Creek township, and therefore not entitled to vote therein.

I shall, therefore, claim to have your vote in said county of Wirt diminished by a number corresponding to the number of illegal votes, which were cast for you as herein stated, which being done, makes my majority in said county to be 137 votes, instead of 128 votes as certified, and making my majority in said circuit of 29 votes.

Tenth. I charge that in the following townships in the county of Wood, and at the several voting places therein, to-wit: Rockport in Steele township, Ogdens in Union township, Walker's Station in Walker township, and E. S. Butchers in Slate township, the names entered on the poll books respectively, in said several townships, were not counted by the inspector and clerks in the presence of the supervisor and the number thereof set down in words at length at the foot of the lists, and then signed by the inspectors and clerks respectively, as required by law, in order to prevent fraudulent additions to the votes legally cast at the voting places in said several townships, as will appear by reference to the poll books and returns of said election held in said townships as aforesaid, on file in the office of the clerk of the board of supervisors of Wood county aforesaid. And I further charge that there are no legal and proper returns of the number of persons who voted at said election in the said several townships of Steele, Union, Slate and Walker Station in Walker township in said Wood county; and that the said returns cannot be counted against me, in this your contest for the office of judge of the said circuit; and the same not being counted, but excluded, I shall claim that then the whole vote given you at said voting places, over and above my vote at the same, being your majority therein, shall be added to my majority

in Wood county, thereby making my majority in said county 257 votes, and my majority in the circuit 221 votes.

Eleventh. I charge that after the polls at E. S. Butchers in Slate Township had been opened, and a large number of votes received, that the officers conducting the election at said voting place, did proceed to open the ballot box before sundown of that day and did take all of said ballots out of said box, and they were not taken out one at a time as required by law, but were placed in piles upon a table, and in a loose manner over the table; and this was done previous to "one" of the inspectors reading from said ballots the designation of the offices to be filled, and the names of the persons to be voted for, for each office, "in the presence of all the other officers," as required by law, thereby increasing the opportunities for said ballots to be tampered with.

And I further charge that the said officers conducting said election at said voting place, did receive votes while they were counting the ballots aforesaid to my prejudice.

And I further charge that while the said ballots were so scattered upon said table, uncounted and unprotected, the said officers of election, or all but one of them, did go off, and absent themselves from the room wherein they were contained; the said ballots not being in the ballot-box, and carefully sealed, so that it could not be opened, or any ballot taken therefrom or entered therein without breaking the seal; which seal should have the names of said officers written across the place, where it was sealed; all of which was done without warrant of law, without any necessity whatever, but with negilence and misconduct amounting to fraud, whereby said ballots could be tampered with to my prejudice.

Wherefore, I shall claim to have the votes cast at said election at E. S. Butchers in said Slate township, set aside and excluded from the count of the vote for the office of judge of said circuit in said county of Wood;

80

1878.
January
Term.

Loomis
v.
Jackson.

which being done will give me 115 majority in said county, and a majority in said circuit of 79 votes.

Twelfth. I charge that, after the polls at Rockport in Steele township in said county of Wood, were closed, and the ballot box opened, the officers conducting said election, to-wit, one of the inspectors, did not take from said ballot box, "One ballot at a time, in the presence of all the other officers, and read therefrom the names of the offices to be filled, and the names of the persons voted for, for each office, and hand the ballot to the other inspector, who should be satisfied that it was read correctly;" but on the contrary, took all of said ballots out of said box and put them on a table and counted them over and placed them in piles over the table, and so carelessly and loosely conducted the counting of said ballots, as to render uncertain the result of said poll at said voting place, and afford means for tampering with said ballots to my prejudice.

And I further charge that the officers conducting the election at said voting place, opened the ballot-box at about 4 o'clock, P. M., of the day of the election, and proceeded to count the same, and after counting a portion thereof, ceased and took other votes then and there offered, and then proceeded to count the ballots again, and after counting for some time, adjourned for the space of one hour, leaving the said ballot box unsealed and not endorsed as required by law; and then proceeded to count and tally again, and after awhile adjourned until next morning, leaving the said ballot box still unsealed and not endorsed as required by law; and said ballot box so remained until about 8 o'clock, A. M. of the next day, thereby affording ample opportunity for the perpetration of fraud upon the same.

I shall, therefore, claim to have the votes cast at said election at Rockport in Steele township, set aside and excluded from the count of the vote for the office of judge of said circuit in said county of Wood; which being

done will give me 112 majority in said county, and in said circuit a majority of 76 votes.

Thirteenth. I charge that at the voting place in Union township in Wood county, to-wit: Ogdens, the polls were not closed on the day of said election at sundown, as required by law; and that votes were received and allowed after dark·upon said day to the number of nine or thereabouts, which said votes were counted and allowed to you, wherefore I shall claim to have the votes then and there taken, set aside. And I further charge, that the officers conducting the election at said voting place in said Union township in said county, to-wit: the inspectors, or the supervisor and one inspector, did not, as the results were ascertained of the election held at said voting place, sign two certificates to the effect prescribed in the 61st section of chapter 3, of the Code of West Virginia; nor did they sign two certificates corresponding in all respects with each other, and containing complete returns of the polls taken at said place of voting for every office to be filled, and more especially for the office of judge of the fifth judicial circuit; but the said inspectors, or the supervisor and one of the inspectors, wholly failed and neglected so to do; and, therefore, I charge there is no legal and proper return of the votes cast for the office of judge at said voting place in Union township. Wherefore, I shall claim to have the said poll set aside and excluded from the count of the vote for the office of judge in said county of Wood; which being done will give me 103 majority in said county of Wood, and a majority in said circuit of 67 votes.

Fourteenth. That the following persons voted for you in said county of Wood; and that the same were received and counted for you at the several voting places set opposite their names; and that said votes were illegal and ought not to be received and counted for the reasons stated herein :

At Walkers Station in Walker township in said county, Joseph Enox, William Cade, Benjamin Schoolcraft,

1878.
January
Term.

·Loomis
.v.
Jackson.

Hunter Riley and J. A. Anderson voted for you for the office of judge of said circuit at said election. I charge that said votes were illegal, and should not be counted and allowed to you, because the persons casting said votes were non-residents of said township in said county, and were not therefore entitled to vote therein.

At the court house in Parkersburg township, Austin Gibbs, Citizen Thomas, Richard Dodds or Dodd, A. Diggs or Austin Diggs and George Washington voted for you for the office of judge of said circuit at said election. I charge that said votes were illegal, and should not be counted, because they were all non-residents of the State of West Virginia; and in addition, said Citizen Thomas and George Washington were minors under the age of twenty-one years, and that therefore all of said votes were illegal, and said person were not entitled to vote at said election.

At the voting place in Tygart township in said county of Wood, A. McConahay voted' for you for the office of judge of said circuit at said election. I charge that said vote was illegal, and should not be counted and allowed to you, because the said A. McConahay was a non-resident of the State of West Virginia, and a non-resident of said township and county, and therefore was not entitled to vote therein at said election.

I shall, therefore, claim to have my majority in said county increased, by the number of illegal votes received by you, as here set out, in said county of Wood; which being done gives me————majority in the county of Wood, and————majority in said circuit.

Fifteenth. I charge that at the voting places in the following townships in the county of Pleasants, to-wit: in Grant township, Lafayette township and Union township, the names entered on the poll books in said several townships were not counted by the inspectors and clerks in the presence of the supervisors, and the whole number thereof, at the foot of each of said lists, set down in words, and signed by the respective persons · acting as

1873.
January
Term.

Loomis
v.
Jackson.

inspectors and clerks, at the said several voting places in said townships, as required by law, in order to prevent fraudulent additions to the votes legally cast at said election; as will appear by reference to the poll books and returns of said elections held in said township as aforesaid, on file in the office of the clerk of the board of supervisors of Pleasants county aforesaid. And I furthur charge that there are no legal and proper returns of the number of persons who voted at said election in the said several townships of Grant, Lafayette and Union in said Pleasants county; and that the said returns, cannot be counted against me in this your contest for the office of judge of the said circuit; and the same not being counted, but excluded, that thereby my majority in said county of Pleasants is increased to 121 votes, and thus increases my majority over you for judge of said circuit to 89 votes.

Sixteenth. I charge that at the voting place in Grant township in the county of Pleasants, the officers who conducted said election for said township, were not legally and properly sworn to perform their duties, before entering upon the discharge thereof, and before making any return of said election. And I furthur charge, that if said officers were sworn, that there is no legal and proper certificate of any such oath being administered to them as required by law. And I further charge that the contents of the ballots, as they were read, were not entered by the clerks, under the supervison of the supervisor and inspectors, on tally papers for the purpose, by suitable marks made opposite to or under the name of such persons voted for, so as to show the number of votes received by every person for any office to be filled.

And I further charge that there are no legal and proper returns of the election held at said voting place in said township or of the number of persons who voted at said election; or of the number of votes, received by every person for every office to be filled at said election;

and especially for the office of judge of said 5th judicial circuit; and that the said returns cannot be counted against me, in this your contest for the office of judge of said circuit; and the same not being counted, but excluded, I shall claim that thereby my majority in said county was increased to 58, and my majority in the circuit to 26 votes.

Seventeenth. I further charge, upon information and belief, that the election held in and for said Lafayette township in said county of Pleasants, for the office of judge of said circuit, on the 22nd day of August 1872, was not lawfully held, and properly conducted in this: That said election was held at a place called Hebron in said township of Lafayette in said county; and being so held there, I aver it was so held at said place without authority of law, the said Hebron never having been designated by the supervisors of the county of Pleasants, as a place of voting for said township of Lafayette, but on the contrary the school house in said township, known as the Hebron school house, about one mile from where said election was actually held, and in said township was the legal and proper place designated by law for holding elections in said township. Or if it should appear, that said Hebron school house in said township is not the legal and proper place, designated by law, for holding elections in said township, then I charge that there is no place designated by law, or by the supervisors of said county of Pleasants, in said township for holding elections; and that the election so pretended to be held at said Hebron in said township in said county of Pleasants, for the office of judge as aforesaid, is null and void. I shall, therefore, claim that the whole vote cast at said pretended election held in said township of Lafayette in said county, be excluded and disregarded in the contest you have originated against me, for the office of judge as aforesaid; and that being excluded my majority in said county of Pleasant will be 80, and in said circuit will be 48 votes.

Eighteenth. I charge that at the voting place in Union township in said county of Pleasants, the officers who conducted the said election for said township, were not legally and properly sworn to perform their duties, before entering upon the discharge thereof, and before making any return of said election, as required by law; or if the said officers were sworn, that there is no legal and proper certificate of the same. Wherefore, I shall claim to have said poll set aside and excluded from the count of the votes for judge of said circuit in said county of Pleasants; which being done, my majority in said county will be 80, and in said circuit will be 48 votes.

Nineteenth. I further charge, upon information and belief, that the election held in and for said Grant township in said county of Pleasants, for the office of judge of said circuit, on the 22d day of August 1872, was not, lawfully held and properly conducted, in this : That said election was held at a place and house called a school house, on Calf creek in said township and county. And being so held there, I aver that it was so held at said place and school house without authority of law, the said school house never having been designated by the supervisors of said county of Pleasants as a place of voting for said township of Grant, but on the contrary, the house at the mouth of Cow creek, formerly known as the Willow Island Post Office in said township and county, about three miles from said school house on Calf creek, was the legal and proper place for holding elections in said township. Or if it should appear that the house at the mouth of Cow creek, formerly known as the Willow Island Post Office in said township and county aforementioned, is not the legal and proper place for holding elections in said township, then I charge that there is no place designated by law, or by the said supervisors of said county of Pleasants, for holding elections in said township; and that the election so pretended to be held at said school house on Calf creek in said township in said county of Pleasants, for the office of judge as afore-

said, is null and void. I shall therefore claim that the whole vote cast at said pretended election held in said township of Grant, be excluded and disregarded in the contest you have originated against me for the office of judge as aforesaid; and that being so excluded, my majority in said county of Pleasants is 58 votes, and in the circuit 26 votes.

Twentieth. I further charge, on information and belief, that the election held in and for Union township in said county of Pleasants for the said office of judge, on the 22nd day of August 1873, was not lawfully held and properly conducted in this: That the said election was held at a place and house called Berkhimers Store, at the mouth of Sugar creek in said township and county. And being so held there, I aver that it was so held at said place and store room without authority of law; the said place and store room not having been designated by the board of supervisors of said county of Pleasants as a place of voting for said township; but on the contrary, the place established by law for holding said elections, was a log school house, a mile up the creek, and a mile from said Berkhimer's Store; and was the legal and proper place for holding elections for said township in said county. Or if it should appear that the said log school house, a mile up said Sugar creek aforementioned, is not the legal and proper place for holding elections in said township, then I charge that there is no place designated by law or by the board of supervisors of said county of Pleasants for holding elections in said township; and that the election so pretended to be held at said Berkhimer's store in said township of Union in said county, for the office of judge aforesaid, is null and void. I shall, therefore, claim that the whole vote cast at said pretended election held in said township of Union be excluded and disregarded in the contest you have originated against me for the office of judge as aforesaid and that being so excluded, my majority in said county of Pleasants is 80 votes, and in said circuit is 48 votes.

Twenty-first. I further charge that the following named persons voted for you in Washington township in said county of Pleasants; and that the same were counted for you; and that said votes were illegal, and ought not to be received and counted for you, for the reasons stated herein:

Daniel Summers voted for you in said Washington township for the office of judge as aforesaid. I charge that said vote was illegal, in this: That said Daniel Summers was not a resident of said Washington township, but was a resident of McKim township in said county, and therefore said Summers had no legal right to vote in said Washington township aforesaid.

R. A. Shepardson also voted for you for judge as aforesaid, in Washington township aforesaid, at said election. I charge that said vote was illegal, in this: That said Shepardson was at the time a non-resident of the State of West Virginia, and was a non-resident of said county and township, and therefore, not entitled to vote at said election in said township. I shall, therefore, claim that your vote at that voting place in Washington township be diminished by two votes; and thereby increase my majority in said circuit to 22 votes.

Twenty-second. I charge, that at the voting place in McElroy township in the county of Tyler, the officers who conducted said election for said township, were not legally and properly sworn to perform their duties as such officers, in this: That they were administered an oath by a person claiming to be, and to act, as clerk of the said township, he not being then and there authorized to administer oaths.

That the names entered on the poll books in said McElroy township aforesaid, were not counted by the inspectors and clerks in the presence of the supervisor, and the whole number thereof set down in words at the foot of the lists, and signed by the persons who acted as inspectors and clerks at said election in the manner prescribed

81

by law, in order to prevent fraudulent additions to votes legally cast. Wherefore, I shall claim to have your majority in said county diminished by one hundred and one votes; which being done will give you a majority of three hundred and twenty-six votes over me, instead of four hundred and twenty-seven as returned; and thereby increasing my majority in said circuit to one hundred and twenty-one votes.

Twenty-third. I charge that, in the following townships in said county of Tyler, also at the several places of voting therein, to-wit: in Meade township, Centreville township, Union township and Ellsworth township, the names entered on the poll books in said several townships, were not counted by the inspectors and clerks, in the presence of the supervisors thereof, and the whole number thereof, at the foot of each of said lists, set down in word,s and signed by the respective persons acting as inspectors and clerks at the said several voting places in said townships, as required by law, in order to prevent fraudulent additions to the votes legally cast at said election; as will appear by reference to the poll books and returns of said elections held in said townships as aforesaid, on file in the office of the clerk of the board of supervisors of Tyler county aforesaid. And I further charge that there are no legal and proper returns of the number of persons who voted at said election in the said several townships of McElroy, Meade, Centreville, Union and Ellsworth in said Tyler county; and that the said returns cannot be counted against me in this, your, contest for the office of judge of the said circuit. And the same not being counted, but excluded, I shall claim that thereby the majority which is alleged to be yours, over me in said county of Tyler, for the office of judge as aforesaid, must be diminished 353 votes; and thus increase my majority over you for the said office of judge in said circuit to 373 votes.

Twenty-fourth. I further charge, upon my information and belief, that, at the voting place in the said township of

Ellsworth in said county of Tyler, at the election held there as aforesaid, the inspectors and clerks of said election thereat, did not in the presence of the supervisor, as soon as possible after the said poll was closed, proceed to count the names entered on the said poll books, and the number thereof set down in 'words at length at the foot of the lists, and sign the same as required by law. On the contrary I allege, as I am informed and believe, that the said supervisor, inspectors and clerks at the said voting place in Ellsworth township, did not on the evening of said election, as soon as possible, proceed to ascertain the result of said election at that place; but they, the said officers, without carefully locking and sealing up the ballot box used at said election at said voting place, without warrant of law, without any necessity whatever, but with negligence and misconduct amounting to fraud, did place the said ballot box, containing the ballots uncounted by said officers, and sealed only by a flimsy bit of paper, and without other protection to the ballots aforesaid, in the office of the clerk of the supervisors of said county of Tyler; he not being one of the officers conducting said election, but one of the candidates voted for thereat; whose name was on the ticket with you, the said George Loomis, to-wit: the Republican ticket. And I further aver, therefore, upon my information and belief, that until the said votes at said voting place in said township were counted, and the certificates of the result were signed, that the said ballot box containing said ballots did not remain in the immediate custody of the supervisor and inspectors, or one of them, as is imperatively required by the 19th section of chapter (3) three of the Code of West Virginia.

And I further aver, upon my information and belief, that said ballot box was allowed, thus insecurely sealed and protected, to remain in the office of said clerk of said supervisors of Tyler county from the evening at the

close of said election, until the next morning after breakfast; the long period of about twelve hours.

I shall claim, therefore, that the return of the election for judge of said circuit at said Ellsworth township, shall not be counted, but shall be set aside and excluded; and being so excluded, that your majority over me in said county of Tyler for said office of judge of said circuit, as certified by the supervisors of said county, must be reduced by one hundred and twenty-five votes; thereby adding to my majority in said circuit said votes, and making said majority to be one hundred and forty-five votes.

Twenty-fifth. I further charge, upon information and belief, that the election held in and for Lincoln township in said county of Tyler, for the office of judge of the fifth judicial circuit aforesaid, on the 22nd day of August 1872, was not lawfully held and properly conducted in this: That William Russell's school house in said Lincoln township in said county of Tyler, a place well known and still existing, was by law duly established as the place of voting in said township; nevertheless, it appears that a pretended election was, on the same day and in the year aforesaid, held at the town of Sistersville in said township of Lincoln, at another and a different house than the school house of William Russell, or the house well known by the people of said township to be William Russell's school house, to-wit: at a place and house called the council room in Sistersville aforesaid. And I further aver that the place of voting so fixed at William Russell's school house aforesaid, in said Lincoln township aforesaid, has never from thence hitherto been changed by any proper and competent authority, in the manner provided by law. I shall rely upon the records of the board of supervisors of said Tyler county as evidence of the facts herein averred.

I shall, therefore, claim that the whole vote at said pretended election in said township of Lincoln, be excluded and disregarded in this contest you have origi-

nated against me for the office of judge as aforesaid; and tat the same being so excluded, your majority, as certified as aforesaid in said county of Tyler, must be diminished seventy-one votes, and mine in the said circuit for the said office to the like number increased; thereby making my majority in the said circuit for said office ninety-one votes.

Twenty-sixth. I further charge, upon information and belief, that the election held in and for Lincoln township in said county of Tyler, for the said office of judge on the 22nd day of August 1872, was not lawfully held and properly conducted in this: That the said election was held at a place and house called the council room in Sistersville in said township of Lincoln in said county; and being so held there, I aver it was so held at said place and room without authority of law; the said council room never having been designated by the supervisors of said county of Tyler, as a place of voting for said township of Lincoln; but on the contrary, the school house in said township known as the William Russell school house, was the legal and proper place designated by law for holding elections in said township. Or if it should appear that the said school house of William Russell in said township aforementioned, is not the legal and proper place, and the place designated by law for holding elections in said township, then I charge that there is no place designated by law, or by the said supervisors of said county of Tyler, in said township for holding elections; and that the election so pretended to be held at said council room in Sistersville in said township in said county of Tyler, for the office of judge as aforesaid, is null and void.

I shall, therefore, claim that the whole vote at said pretended election, held in said township of Lincoln, be excluded and disregarded in the contest you have originated against me for the office of judge as aforesaid; and that being so excluded, your majority, as certified as aforesaid in said county of Tyler, must be diminished

1873.
January
Term.

Loomis
v.
Jackson.

seventy-one votes, and my majority in said circuit for the said office must be increased a like number; making my majority in the said circuit, for said office, ninety-one votes.

Twenty-seventh. I further charge, upon my information and belief, that at the voting places in the townships of Lincoln, McElroy, Meade, Centreville and Union in said county of Tyler, at the election held at the respective voting places in said townships, the inspectors and clerks of said election thereat, did not in the presence of the supervisor, at said several voting places, as soon as possible after said poll was closed, proceed to count the names entered on the poll books, at said several places of voting in said townships, and the number thereof set down in words at length at the foot of the lists, and the said inspectors and clerks sign the same, as they were required by law so to do. On the contrary, I allege, as I am informed and believe, that the said supervisor, inspectors and clerks at each of the voting places in said townships last mentioned, did not on the evening of said election, as soon as possible, proceed to ascertain the result of the elections at the said several voting places in said townships; but the said officers at said voting places, did put and place the ballot boxes of the said several voting places in said townships, and having the ballots of said voting places, cast at said election, contained therein, in some place or places to me unknown, for a long space of time, to-wit: about twelve hours, without warrant of law, without any necessity whatever, but with negligence and misconduct amounting to fraud. And I charge, upon my information and belief, that the said several ballot boxes of said several townships, so containing the ballots cast thereat as aforesaid, during said space of time, to-wit: twelve hours, did not remain in the immediate custody of the supervisors and inspectors of the elections so held in said townships, or in the immediate custody of any one of them with the consent of the others. And I further charge that said ballot boxes

1873.
January
Term.

Loomis
v.
Jackson.

of said several townships, being so left as aforesaid during the time aforesaid, were not carefully sealed; so that they and each of them could not be opened, or any ballot taken therefrom or entered therein without breaking the seal; and that said supervisors and inspectors did not, nor did any or either of them, write their names across the place or places where said boxes and each of them should be sealed, when they were so placed as aforesaid, as they were required by law so to do.

I shall claim, therefore, that the return of the election for judge of said circuit, at the said several townships, shall not be counted, but shall be set aside and excluded; and being so excluded, that your majority over me in said county of Tyler for said office of judge of said circuit, as certified by the supervisors of said county, must be reduced three hundred and three votes, thereby adding a like number to my majority in said circuit, and making the same three hundred and twenty-three votes.

Twenty-eighth. I further charge that should the poll of Lincoln township in said county of Tyler, be not set aside, for the causes hereinbefore set forth, then that the following named persons, minors and non-residents of this State, and not entitled to vote at the said election, at the voting place in said Lincoln township aforesaid, to-wit; Charles Watkins a minor, and Charles Watson a non-resident of this State, did contrary to, and in violation of law, at the voting place in said Lincoln township in said county of Tyler, cast their ballots for you, the said George Loomis, for said office of judge, and that the same were received and counted for you. I shall, therefore, claim that your poll at that place be diminished by said two votes; and thereby increase my majority in said circuit to twenty-two votes.

Twenty-ninth. I charge, upon information and belief, that after the election officers at the several voting places, in the several townships in the county of Calhoun, had enclosed the ballots voted at the said several voting places in said several townships in the county of Calhoun,

by the voters thereof, in envelopes, and sealed up the same, and endorsed the same as required by law; and had caused the same to be delivered, so sealed up as aforesaid, to the clerk of the board of supervisors of said county of Calhoun; and after the said board of supervisors for said county of Calhoun, had convened as required by the 62nd section of chapter 3 of the Code of West Virginia, to-wit: on the 28th day of August 1872; and had ascertained the true result of the elections held in said county, on the 22nd day of August 1872; and had made the proper certificates as required by law, they caused the sealed packages of envelopes to be deposited in the office of the recorder of Calhoun county as required by law, sealed up and endorsed as required by law; that the said several packages of ballots, so sealed up as aforesaid, were broken open and examined, and the ballots therein contained, handled and misplaced. And I charge, upon information and belief, that you, the said George Loomis, did cause said sealed packages of ballots, containing the ballots cast at the several voting places in Calhoun, to be so broken open and examined, and the ballots therein to be handled and misplaced; and if it was not done by your express directions, it was so done by your advice, procurement, approbation, assent and connivance.

I shall, therefore, claim that the breaking of the said several packages of sealed ballots as aforesaid, contained in the envelopes aforesaid, at your instance, amounted to or resulted in a tampering with said ballots to my prejudice.

And I further charge, upon information and belief, that if said ballots, so voted at the said several voting places in said several townships in the county of Calhoun, vary in regard to the office of judge as aforesaid, and do not correspond with the certificates of the several officers holding the elections at said several voting places, and with the returns made by them of the result of the election of judge as aforesaid, at the said several voting places, and especially at the voting place in the

township of Washington in said county of Calhoun, then that said ballots have been tampered with, altered and charged; and that said ballots are false and fraudulent, and do not show how the voters, who cast the same, voted for said office of judge as aforesaid; and therefore that they cannot be received as evidence for any purpose whatever, and especially for the purpose of contradicting the returns of said elections, so made as aforesaid, by the officers conducting said elections at said several voting places. I shall, therefore, claim that the breaking of the said several packages of ballots as aforesaid, either by your procurement and direction, or at your instance, or by persons acting in your interests, amounted to, and resulted in a tampering and altering said ballots to my prejudice.

Thirtieth. And I furthermore charge, upon information and belief, that said ballots so cast at the several voting places in the several townships in said county of Calhoun, were duly and properly enclosed in envelopes, and sealed and properly endorsed by the several officers of election at said several voting places in said county, as required by law, when they were delivered to, and deposited in the office of, the recorder of Calhoun county. And I charge that in a petition filed by you before his Excellency, the Governor of the State of West Virginia, which petition was sworn to by you, and in which you prayed for a recount of the votes of the township of Washington in said county of Calhoun, among other things, it is alleged by you, that the poll books of said Washington township show that I, the said James M. Jackson, received 112 votes; whereas my said vote as shown by the tally and ballots was 111; and that the vote received by you, the said George Loomis, as shown by said poll books was nine; whereas the tally shows that you received thirteen. I shall claim to use said petition so filed before the governor as evidence that you either personally, or by your agents, had access to said ballots,

82

and have handled and examined and counted the same contrary to law ; and that the contents of said ballots, could not legally and properly be known. by you; and that such interferences upon your part, either personally or through others, with said ballots were improper, unwarranted and illegal, and amount to a fraud upon my rights in the premises, as leading to well grounded suspecious of unfairness and fraud.

And I furthermore charge, on information and belief, that said ballots so cast as aforesaid at the several voting places, in the several townships in the said county of Calhoun, were duly and properly enclosed in envelopes, and sealed and properly endorsed by the several officers of election at said several voting places in said county, as required by law, when they were delivered to, and deposited in the office of, the recorder of said Calhoun county. And I charge that if what is alleged in specification 3 of your petition, in regard to Washington township, be true, that is, "I received but one hundred and ten votes, and yet I am erroneously allowed and certified by the inspectors of said township to have received one hundred and twelve votes, or two more votes than what I in fact received; and that in said township you received thirteen votes, and yet the inspectors of said township allow and certify that you only received, in said township, nine votes, or four votes less than you did receive," then that such information in regard to said errors so alleged by you, could not be known to you except the said ballots had been examined by you personally, or by some one for you contrary to law. I shall, therefore, claim that said ballots, if they upon their face show a different result than that contained in the certificates of the officers conducting the said election, and of the returns made by them, have been tampered with; and that they do not constitute evidence more reliable than the inspectors certificates, which were prepared immediately on the close of the election, and upon actual count of the ballots, then made by the officers whose

duty it was to count the same. And I shall, further, claim that I received in said county of Calhoun at said election 469 votes for the office of judge aforesaid, and you received 186 votes at said time for the office of judge aforesaid; and that the said votes were rightfully and legally certified to, by the board of supervisors of said Calhoun county, and that certificate cannot be impeached by said ballots.

Thirty-first. Finally, I charge that such irregularities exist in the conducting of the election in said county of Tyler, and counting the vote thereat by the officers thereof, that a recount of the ballots cast at said election in said county is required to ascertain what the true vote is. I shall, therefore, ask to have said ballots recounted, and the mistakes of the officers conducting said election corrected.

In conclusion, I, the said James M. Jackson, claim that I was duly elected to the office of judge of the 5th judicial circuit of the State of West Virginia by the qualified voters of said circuit, on the 22nd day of August 1872, and am entitled to be commissioned as such judge according to law.

Respectfully, &c.,

JAMES M. JACKSON.

STATE OF WEST VIRGINIA,

COUNTY OF WOOD, to-wit:

Personally appeared before me, John M. Mitchell, a justice of Parkersburg township in said county of Wood, James M. Jackson, whose name is signed to the foregoing notice, and made oath that the matters therein set forth, so far as they are stated of his own knowledge are true, and so far as they are stated on the information of others he believes them to be true.

JAMES M. JACKSON.

Taken, sworn to and subscribed before me this 31st day of October 1872.

J. W. MITCHELL,
Justice of Parkersburg Township.

I Served the within notice on George Loomis by delivering a true copy to him on the 1st day of November 1872.

W. J. HILL, S. W. C.

On the 9th day of November 1872, the Contestant served his replication to Respondent's return notice, and an additional notice with four new specifications in the words and figures following :

To JAMES M. JACKSON, Esq.

Having been served with a "return notice" with specifications numbered from 1 to 31 inclusive, except there is none numbered the twelfth—I hereby notify you, in addition to my former notice, that after the latter was served upon you, I have discovered new facts which I shall rely upon in the trial of said contest; that said facts are more specifically set forth in the specifications hereinafter contained.

You are further notified, that at a general election of state and county officers held on the fourth Thursday in October 1868, I was duly elected judge of the 9th judicial circuit of this state; and afterwards, in pursuance thereof, was duly commissioned by the Governor of West Virginia to hold my office for the term of six years from the 1st day of January thence next ensuing ; that I qualified as such judge according to law; and that my term of office will not expire until the 31st of December 1874; that said circuit comprises the aforesaid counties of Wirt, Wood and Pleasants; that the election, by virtue whereof you claim the right to be commissioned as judge, was in all respects unauthorized by law; and that the same was null and void so far as the election of judge was concerned ; that the constitutional convention fixing the fourth Thursday of August 1872, for the election of judges (among other officers) did transcend and exceed the powers delegated to it by the legislature and the people of this state; and the officers who held and carried on said election on the 22nd day of Au-

gust 1872, so far as the same was for judge as aforesaid, and made returns thereof, acted illegally and without authority of law. I therefore protest against the same, and shall claim my right to the office of judge under the election aforesaid of 1868, and to hold said office for the aforesaid full term of six years.

If however, the law of the case is not with me in these particulars, I am not be understood as waiving any of my rights arising in the premises by virtue of the aforesaid election held on the 22nd day of August 1872; but shall insist upon all and every of them.

I hereby reply generally to the matters set up in your notice and specifications; and for more specific and special replication thereto say : That as to the matters charged in your specifications from 1 to 6 inclusive, I have no knowledge as to their truth or falsity, but even if they are true, I shall claim that they do not affect the validity of the elections therein respectively mentioned, and I shall object to all and any evidence taken to sustain them as being improper, irrelevant and immaterial to the issues raised in this contest.

As to your 7th, 8th, 14th and 28th specifications, I know nothing of the matters therein charged, and do not admit them to be true.

As to your 9th, 16th, 17th, 18th ,19th, 20th, 21st, 22nd, 23rd, 25th, 26th and 27th specifications, I know nothing of the matters therein charged, and do not admit them to be true.

As to your 10th, 11th, 13th, 15th, 22nd, 23rd, 24th, 25th, 26th and 27th specifications, I do not admit them to be true, and I shall object to them by reason of their vagueness and insufficiency, and shall also object to proof thereof, because they are irrelevant and immaterial, in my opinion, to the issues raised in this contest.

As to your 29th specification, the matters as therein stated are untrue.

As to your 30th specification, I demur to the same for vagueness, and deny all and every imputation against

me therein made, either directly or by innuendo. I know nothing of any improper action of any person as therein stated, and if any was had it was without my knowledge or consent.

As to your 31st specification I reply generally thereto.

You are hereby further notified, that while I do not admit that the informalities charged by you in your 10th, 15th, 22nd, 23rd, 24th and 27th specifications (and wherever else charged) touching the alleged failure of the officers of election at the respective voting places therein mentioned, "To have the names entered on the respective poll books, counted, and the numbers thereof set down in words at length at the foot of the lists, and then signed by the inspectors and clerks respectively, &c;" and further, while I do not admit that the informalities charged in your 23rd specification, as to the officers of the election not being legally sworn as therein stated; and in your 13th specification as to the alleged failure of the officers to sign a proper certificate as therein charged; and while I do not admit that these or any other informalities or omissions or non-compliances with the sections of law, by you referred to, on the part of said election officers, either in said specifications or others in your return notice charged, invalidate the election at the voting places named, even if said charges are true, nor do I admit the legal effect of them to be as you claim, even if they are true; yet if it shall be held to be otherwise, that is to say, if the effect of these alleged informalities (provided they are true) be as you claim, to-wit; to exclude the vote cast at said voting places respectively; then I shall claim that the entire election for judge of the 5th circuit aforesaid is a nullity, by reason of so large a number of legal voters being practically disfranchised in consequence thereof, and without fault of the voters, and without remedy to them.

You are further notified that, if the aforesaid non-compliances of the officers of the said election with the sections of law referred to, and the alleged informalities

and omissions are true, and are insisted upon, and are allowed to have the legal effect and operation that you claim for them, then I shall insist upon, and claim to have the same legal effect and operation given to each and every irregularity, omission and non-compliance, with said sections of law of the same, or similar nature, wherever they have occurred within the said circuit. And I charge, upon information and belief, that they do exist, and did occur at a very large majority of the voting places throughout said circuit—the evidence of which I shall procure as I have opportunity, to be used on the trial of this contest; and especially is it true, as I am informed and believe, that in no instance have the inspectors, or the supervisors and one of the inspectors, at any of the voting places throughout said circuit certified "the full name of any person, except my own, voted for for judge at said election as required by the 6th section of chapter 3rd of the Code of West Virginia.

I am informed, believe and charge that your "full name', is James Monroe Jackson, and that said "full name" nowhere appears upon any of said poll books, and that you cannot have allowed to you votes given for J. M. Jackson, or for James M. Jackson, if the non-compliances with said sections of law do exist, as you have charged, and if they are to have the legal effect that you claim for them.

In candor, I state that I do not deem them material; but if they are to operate in your favor where they exist to my prejudice, I claim to have them operate in my favor where they exist to your prejudice.

The following additional specifications I shall rely upon.

1st. That at Freeport, a voting place in Clay township in Wirt county, I am informed and believe, the officers then and there conducting said election did, about 1 o'clock P. M. on the day of the election, announce that the voting would be suspended, and it was suspended accordingly; and the ballot box

opened, and the counting of the ballots was then commenced, and when finished, the box was again closed and additional votes received; and in this manner the ballots were counted, the voting suspended and resumed from time to time frequently; and the polls were finally closed before sundown; and that these and other illegalities and irregularities then and there occurred to my prejudice. I shall, therefore, claim to have said poll set aside.

2nd. I charge, upon information and belief, that the officers conducting the election at Newark, a voting place in Newark township in Wirt county, were not sworn according to law before entering upon their duties as such officers; and were not sworn, if at all, until after the polls were closed and the books returned to the clerks of the board of supervisors. I further charge, upon information and belief, that the polls at Newark aforesaid were closed before sundown, and the ballot box opened and its contents examined before the voting had ceased; and that these and other irregularities and illegalities then and there occurred to my prejudice. I shall, therefore, claim to have said poll set aside.

3. I charge, upon information and belief, that at several of the voting places in Calhoun county, especially at Richardsonville, some of the officers then and there conducting the election, did not act fairly and impartially, as by law they were required to do; but on the contrary thereof, suppressed, concealed and destroyed ballots that had my name upon them as a candidate for judge, so that the same could not be furnished to voters who desired to vote the same ; and that other improper influences were by them, or some of them, exerted to wrongfully increase your poll, and to diminish mine; and that the same was done by previous arrangement with yourself, with your assent and connivance, and to my injury and prejudice.

I shall, therefore, claim to have your poll at Richard-

sonville aforesaid, set aside; and also at such other voting places in said county where like misconduct occurred.

Respectfully, &c.,

GEORGE LOOMIS

STATE OF WEST VIRGINIA,

WOOD COUNTY, to wit:

Pesonally appeared before me, a notary public duly commissioned and qualified, in and for the county aforesaid, George Loomis, whose name is signed to the foregoing notice, and made oath that the matters therein set forth so far as they are stated on his own knowledge are true, and so far as stated on information of others he believes them to be true. Given under my hand this 9th day of November, A. D., 1872.

W. W. VAN WINKLE,

Notary Public.

Executed November 9th, 1872, at 8 o'clock P. M., by delivering to James M. Jackson, Contestee, a true copy of the within.

W. J. HILL, S. W. C.

On the 26th of November, the Contestant served a supplemental notice and specifications on Respondant in the words and figures following :

JAMES M. JACKSON, Esq.

SIR : You will take notice that on the hearing of the said contest, I shall rely upon proof of the following facts which I hereby append to my former specifications, as a

SUPPLEMENTAL SPECIFICATION NO. IV.

I charge, upon information (first coming to my knowledge on the 23rd day of November 1872,) that at the election held on the 22nd day of August 1872, in Washington township in the county of Pleasants, the poll books for said township do not show that any person whomsoever was voted for for judge at said election, at the voting place for said township; nor is there any cer-

83

tificate as required by law, on said poll books, made by the proper officers, nor by any of the officers conducting said election, that any person whomsoever received any votes for said office of judge of the 5th circuit of West Virginia. Yet you are certified by the board of supervisors of Pleasants county, to have received eighty-seven votes for said office of judge, in said township, and I am certified by the same board to have received sixty-five votes for said office. I shall, therefore, claim to have the said 87 votes, and the said 65 votes deducted from our respective polls in Pleasant county.

Yours &c.,

GEORGE LOOMIS.

WIRT COUNTY, STATE OF WEST VIRGINIA.

I, George Loomis, on oath do say that the matters in the foregoing writing, so far as stated on my own knowledge, are true, and so far as stated on information I believe to be true.

GEORGE LOOMIS.

STATE OF WEST VIRGINIA,

WIRT COUNTY, RECORDER'S OFFICE, to-wit:

Taken, sworn to and subscribed before me, recorder in and for the county of Wirt this 26th day of November 1872.

O. L. WILLIAMS.

Recorder of Wirt Co., W. Va.

Executed the within notice and specification, on the the 26th day of November 1872, upon Jas. M. Jackson, by delivering to him in person, in Wirt county West Virginia, a true copy of the said notice and specifications, this 26th day of November 1872.

J. H. WILSON,

Dep. for Thos. Foster, Sheriff of Wirt Co. W. Va.

Various other papers were filed in the contest in the office of the Governor, and which are referred to in the opinion of the Court, but it will not be necessary to set them forth.

Both parties took a great amount of testimony to establish their different charges and specifications; but, according to the view which the Court took of the case, it will be needless to state the substance of the proof.

Pursuant to section 13 of chapter 6 of the Code, the governor appointed the Hon. Benjamin H. Smith to act as President of the Court; the Contestant selected Hon. R. S. Brown, and the Respondent selected the Hon. Samuel Woods, as associate judges. The 28th of December 1872, was appointed by the governor as the time, and Charleston the place, for the hearing of the contest.

The Court met at the Capitol and held its sessions in the senate chamber.

The contest was determined upon a motion to quash the petition, notices and specifications of Contestant.

*Judge James H. Brown* and *W. S. Sands, Esq.,* for Contestant.

*Hon. N. Fitzhugh, Col. Wm. H. Hogeman* and *John A. Hutchinson* for Respondent.

### HUTCHINSON FOR RESPONDENT.

*Requisites of Notice and Specifications.*

As the special tribunal, by whom this case must be tried, has jurisdiction only by force of the statute, and has no common law power, it must appear from the notice and specifications of Contestant, properly filed, that he has a case of which it has jurisdiction; therefore, the notice and specifications must clearly set forth the facts upon which the objections to the election of the Respondent are founded. Code, Chap. 6, sec. 2. The law requires "each party" to append to his notice his affidavit that the matters therein set forth, "so far as they are stated of his own knowledge, are true, and so far as they are stated on the information of others, he believes them to be true."

Each objection mentioned in the notice must be followed by a specification of matters upon which it is based.

Mere general allegations afford no basis for the examination of this special court; nor, in ordinary cases, would they be sufficient to put the respondent to defence upon the merits.

Thus in Skerrett's case, Brightly's Leading Cas. on Elec., 320, it was held that a petition complaining of an undue election return, must set forth the facts with precision; and they must be sufficient, if sustained by proof, to render it the duty of the court, either to vacate the election, or to declare that another person than the one returned, was duly elected; and that unless it be thus specific, and set forth facts that, if true, would have changed the result, it will be quashed on motion. This was so ruled in Carpenter's case, 2 Parsons, 537. Kneass' Case, Ibid 533. Thompson *vs.* Ewing, Ibid 68. Mann *vs.* Cassidy, Brightly, L. C. E., 351. Taylor *vs.* Taylor, 10 Minn., 107, and Augustin *vs.* Eggleston, 12 La. An., 366, cited in note to Sherrett's case. The case of Gibbons *vs.* Sheppard, Brightly L. C. E., 588, can not be regarded as contravening this principle, for the reasons stated at large in note to that case by Mr. Brightly. "Its authority," he says, "except upon the jurisdiction of the Supreme Court, is much weakened by the able dissenting opinion of the Chief Justice, and the acknowledged great ability of the dissenting judges." The dissenting opinion will be found in 65 Penna. State Rep., 20.

Let us examine the Contestant's notice and specifications in the light of this rule.

The first ground of contest is, that the Contestant was a candidate for said office of judge; was voted for at said election; received a higher number of votes than the Respondent; and is entitled to be commissioned as such.

The second ground is, that in divers precincts in the counties composing the circuit, there was such malconduct at the several voting places by the election officers, and such interference by others suffered at the polls, as to preclude a fair expression of the will of the legal voters;

and to render it impossible to determine the choice, at such voting places, of the voters for said office; and therefore said officers wrongfully and to his injury and prejudice declared the Respondent elected.

The third ground is, that in Parkersburg township, the Respondent expressly directed certain ballots, found folded or rolled together by the officers in the ballot box, to be destroyed; and therefore he claims, that if the result of the election was in accordance with the certificates of the several boards of supervisors (after being corrected as specified in the specifications) the destruction of said folded ballots would of itself change the result of the election for the said office of judge.

Now these are the several objections to the legality of the election, and the specifications are doubtless intended "to set forth the facts on which such objections are founded," as the Code requires.

Unless the facts "set forth" in the specifications, support the several grounds or objections alleged, this Court cannot consider them; for it is essential, to constitute a proper notice, that the "objections" should be based on particular facts; and that the "facts set forth" should relate to and uphold the "objections" stated.

In what then, are the specifications defective?

Specification 1. In this: it is not embraced in the terms of either of the alleged grounds or objections. If it is, the first clause is imperfect in not showing that the result would be changed by allowing Contestant the alleged five votes. The second clause is vague and indefinite.

Specification 2. In this: it is vague and uncertain in not indicating how Contestant is affected by the acts charged therein; in alleging "that the said election at that place was conducted generally in such manner as to repel the presumption that the ballots were not tampered with;" and if true as charged, the matters are not sufficient to annul the election there.

Specifications 3 and 4. In this : that as to the result of said election in Calhoun county, in the townships named, the allegations are not of facts, but "of conclusions drawn from facts" not stated. The attempt is to aver fraud ; but only insinuates it, without giving the Respondent that precision and fullness of statement, upon which he could be reasonably required to prepare to meet it in proof.

The attention of the Respondent is not directed to any specified illegal votes, or any particular illegal acts of the election officers; but the effort of the Contestant here, is to invalidate the certificates and returns of sworn officers, (presumed to be true and correct) by means, and for reasons, neither averred nor suggested. Of what, in legal sense, is the Respondent practically informed by this specification ? What is the character of proof to be furnished upon this count? It is not here charged that the poll books or tally lists expose the wrongs asserted ; they are to be impeached—but by whom? with what ? What peculiar source or means of knowledge docs the Contestant rest on ? The ballots? He does not mention the ballots, and, not referring to them, or asking for their examination, he places the Respondent in uncertainty upon this vague and general specification. It is not "certainty to a common intent ?" Well say the court in Gibbons *vs.* Sheppard (65 Penn. St. Rep. 36) "The rule must not be held so loosely as to permit the acts of sworn officers chosen by the people, to be inquired into without adequate and well defined cause," "nor is it sufficient" say the court in Carpenter's case cited *supra,* "To state that A recived a majority of the votes, while the return was given to B, and, therefore, the complainant alleges that there was an undue election."

"By an ingenious generalization, therefore," says King J., "such an allegation would open the whole election; permit every kind of objection to be started against the votes given and received ; and this without

1873.
January
Term.

Loomis
v.
Jackson.

any precise or specific averment being previously made against the propriety of their reception."

Specification 5. Is not comprehended in either of the "objections" in the notice of Contestant, or grounds, as he terms them; is vague and uncertain, and if the facts were as charged, they are not sufficient to render the election void, nor would the result be changed.

Specification 6. If true, does not show what the result of the election for judge of the 5th circuit, in that event, would be. It is therefore immaterial.

Specification 7. Is like the preceding.

Specification 8. Is too general. The charge, if true, does not aver how the Contestant was affected. "Well-grounded suspicions of unfairness," are not facts, but conclusions; and to aver that an act is one, "leading to well-grounded suspicions," is not stating the basis of the "suspicions," but an inference from facts not alleged; nor is the averment, that the Contestant claims "that such acts are improper etc." a statement of fact, but a mere opinion. To take hold of, handle, displace and examine ballots, many or few, by a candidate at an election, in the presence of officers, may be perfectly innocent. If it may be so presumed (and is in law so presumed) it is both illogical as well as unjust to say that "suspicions of unfairness" are "well-grounded" on such an act. Is not this specification characterized by the well-grounded unfairness of its suspicions? But suppose, for the argument, that it was true as averred here by Contestant; the consequences claimed by him are not legitimate. It would not effect the certified result, because it is not reasonably shown that any thing wrong was done. "A specification," says King, J., "which is nothing more than a hypothesis; a specification as to what would, in the opinion of complainant, follow an investigation; is not the plain and clear statement of facts," on which an election can be contested.

See numerous cases, in support of this proposition, cited in People vs. Cicott 16 Mich. 323, 324. In Lanier

*vs.* Gallatas 13 La. An. 176, it was said that "It was not enough to charge that if certain illegal votes had been rejected, it would in all probability have changed the result in favor of the petitioner; but that the averment must be direct and positive.

Specification 9. This does not specify any fact which the Respondent could fairly be called on to answer. It is general and not sufficient in law. No such consequence would result, as charged, if it were all true.

Specification 10. This is liable to the exceptions taken to the preceding. Besides, it is argumentative, and not a statement of facts with precision.

Specification 11. Is objected to for reasons already assigned.

Specification 12. Is uncertain and insufficient.

Specification 13. Contains no matter that would justify the exclusion of the votes cast as therein alleged.

The Respondent, therefore, moves to quash the notice and specifications, and to strike out the matter referred to. The grounds assigned for this motion are apparent from an examination of the specifications mentioned. They are not technical or formal. They look to the substance of the charges; and are based on well settled rules of pleading.

The learned and lamented Judge King in deciding upon the very questions here raised—in Skerret's case— (2 Parsons 509—Brightly L. C. Elec. 320) made this general observation : "He has been but a casual observer of the disturbing influences of human passions, who will not admit that if one thing is more required than another to rest on solid, tangible and practical principles, it is the class of inquiries like the present, that spring up amidst the fiercest excitements and most vehement feelings, which men, living under such a government as ours are subjects of. Should too ready an ear be lent to such complaints, it does not require the spirit of prophecy to divine, that elections will rarely term-

1873.
January
Term.

Loomis
v.
Jackson.

inate with the ordinary functionaries under whose superintendance they are placed; but that courts of justice will be perpetually invoked to assume the office most foreign to their organization—that of umpires between the contestants for public favor at the ballot box.

"Where everything is to be gained and nothing to be lost, it will require more philosophy than ordinarily belongs to a discomfited party, to resist the temptation of an appeal from a decision against them at the polls, if such an appeal be afforded, on a complaint so vague and indefinite as to offer no shock to the most tender conscience."

In Kneass' case (2 Parsons 555) it was decided, that every petition alleging an undue election and false return, must be complete in itself, and state such ground as would, if sustained by proof, be cause for rendering it void, or declaring another elected; and when some of the grounds alleged are even irregularities, which, if sustained by proof, would not be sufficient cause for setting aside the election, such specifications will be stricken out, on motion, and the respondent will not be put to the trouble of taking proof.

As has been already urged, the jurisdiction of this Court is derived wholly from the statute creating it; "it possesses no inherent power;" and therefore unless the Contestant brings himself clearly within its terms and meaning, this Court cannot proceed. Precedents of contested election cases of congress or state legislatures are inapplicable, because such bodies, "Have an inherent and fundamental right to judge of the qualification of ther respective members; a right not given by law, but a part and parcel of the very organization of government, and in investigating such cases, they may conduct it *pro re nata.*" Judge King—*supra.* The first principle in the administration of human justice, says the same authority, is the right to notice of the charge or demand, and it is as unquestioned, as unquestionable. To allow the con ·

84

testant to state mere "conclusions" and not facts is to permit him to usurp the functions of the court; and thus deprive it of its right to inquire into the fact, which ought to be alleged.

The notices and specifications are also insufficient, because they do not contain such allegation of fact as, if true, would justify any inquiry into the proceedings of the election anterior to the certificates of the boards of supervisors.

The results certified by the boards, under chapter 3, sections 62, 65 and 66, are in the nature of final judgments, and are conclusive of the facts determined. Whatever defects, omissions or irregularities may be discovered in the proceedings of the election, in the poll books or tally papers, etc., etc., or in the conduct of the election officers, not amounting to actual fraud, the determination of the supervisors of each county in certifying what they adjudge to be the "true results," precludes further inquiry into such defects, etc.   The certificates of the supervisors, under the statute, are final; and, like judgements of courts having jurisdiction, not to be impeached or set aside, except for fraud or mistake appearing upon the face of the proceedings of the boards, or upon some ground which, in equity, would be proper to invalidate the judgment of ordinary judicial tribunals.

We therefore recapitulate, and insist that the alleged specifications Nos 1 to 13 inclusive, for the reasons specially assigned to each, are "vague, unprecise and argumentative; associating irregularities and illegalities; affording no sufficient notice to the Respondent; and wanting in that clearness, plainness and directness which ought to characterize such a proceedings," and should be stricken out of the case.

But, on the 24th day of October 1872, the Contestant served a copy of a supplementary petition, in which he charges, "That at several of the voting places in Calhoun county, the ballots were never sealed up by the inspectors of said election, etc., so that it is difficult, if not impossi-

ble, how to tell what particular ballots were cast at any specified voting place in Calhoun county, and therefore prays that the "ballots" may be produced for inspection upon the trial of the contest, etc."

To this, we object (1.) That it is not filed in time; the Code requiring the Contestant to "give notice with specfications and affidavit, within sixty days" after the election takes place. Chapter 6, section 2. This period elapsed on the 21st day of October 1872. (2.) The charge and prayer of this supplemental petition are inconsistent, indefinite, and present an impossible inquiry to the court. We therefore move to quash it.

On the 9th day of Nov. 1872, the Contestant served upon Respondent a paper purporting to be a "Replication to return notice of Respondent, and additional notice with specifications" of Contestant.

This additional notice, etc., are objected to as not filed within the sixty days, as required by law; and upon this point the court will observe that the Code, chapter 6, section 2, allows the contestant sixty days in which to prepare his case, and the respondent but thirty. Then the parties are required to finish taking depositions within forty days after the respondent's return notice is delivered.

"In other respects, the regulations contained in that chapter regarding contests for seats in the legislature are to be observed, so far as they are applicable."

But it may be contended that section 4 allows additional notice or notices if new facts be discovered. This; however can only be permitted within the term of 60 days; otherwise it would be absurd to limit the time at all. Because, if the time is not material, but the amendment may be made at any time within the period allowed to take depositions, it is very evident that the grossest injustice could be perpretrated upon the respondent, by simply giving him, in the original notice, the most general and indefinite charges, withholding the most important—and then, when it would be too late to make de-

fence by taking proof, etc., to serve him with the essential specifications of the contest. It is clear from section 2, that, as to the time of giving the notices of contest, in cases there provided, that section is to control; but in other respects the regulations contained in that chapter respecting contests for seats in the legislature should be observed so far as applicable. The opinion of the court in Kneass' case does not controvert this view.

Should the court overrule this motion, I then move to quash the additional notice and specifications, for the reasons stated upon the motion made to the original notice and specifications.

WOODS, Judge.

In this case, the respondent James M. Jackson who had been voted for, as a candidate for the office of judge of the 5th judicial circuit, at the election held therein on the 22nd day of August 1872, having been duly certified, by the several boards of supervisors of the counties composing the said circuit, to have received the largest number of votes, was proclaimed, by the governor of the state, duly elected to the office of judge of the said circuit.

The contestant George Loomis who had also been a candidate at the said election for the said office of judge, gave notice to the Respondent of his intention to contest his election to said office; setting forth three distinct ground of contest, with fourteen specifications thereto annexed; which were duly served upon said Respondent on the 5th day of October 1872.

The Contestant, claiming to have discovered new facts after he had given his original notice and specifications, caused to be served upon the Respondent a new notice, with four additional specifications, on the 9th day of November 1872; and afterwards, on the 26th day of November 1872, he caused to be served on said Respondent an additional and supplemental specification, "as an appendage to his former specifications."

The Contestant presented to this Court a petition, addressed to "His Excellency, J. J. Jacob, Governor of the State of West Virginia," of which the said original notice and the fourteen specifications thereto attached were made a part; he also presented said new notice, with said four additional specifications, and the said supplemental specification; all of which were filed, subject to all just and legal exceptions.

The Respondent thereupon moved the Court to quash the said petition, notices and specifications, for errors apparent upon the face thereof, and because the said new notice and specifications were not served within sixty days next after the said election. After the Court had sustained the said motion to quash said notices and specifications, the Contestant moved the Court for leave to amend said specifications and notices, by filing, as parts thereof, copies of the certificates, made by the several boards of supervisors of the counties in said circuit to the governor, of the result of said election for judge in their respective counties; which motion the Court overruled.

The fact that no case has ever before occurred in the history of this State, in which the election of a judge of the circuit court has been contested, in the manner prescribed in chapter 6 of the Code of West Virginia, clothes the case at bar with peculiar interest, not only to the distinguished gentlemen immediately interested in its result, but to all the people of the State.

Presenting for judicial construction, many important questions touching the requirements of the 3rd and 6th chapters of the Code of West Virginia, in conducting elections, and in making returns thereof; the Court approached the consideration of them, with an earnest and anxious desire to reach such conclusions, resting upon principle and authority, as will secure to the qualified voters the fair expression of the popular will in every legal election; at the same time, prevent the defeat of that will, thus ex-

pressed, by the errors, negligence, ignorance, or even fraud of the officers or agents conducting the same.

Among the questions presented, are : In what manner is the matter of a judicial contest inaugurated? To whom must the petition be addressed ? Is the petition filed in this case a sufficient petition ? Do the provisions of the 6th chapter of the Code of West Virginia, authorize the contestant to give to respondent new notices of additional facts discovered after the expiration of sixty days next after the said election ? What are sufficient specifications ? And can the specifications be amended during the trial, by the addition of new and material allegations ?

The novelty, as well as the importance, of these and other questions of law arising in this case, must be my apology for presenting the reasons that have brought my mind to the conclusion hereinafter stated.

The first question naturally presented is, what is the extent of the jurisdiction of this Court? By reference to the 13th section, chapter 6 of the Code, it will be perceived that its jurisdiction is limited to "decide impartially according to law and the truth upon the petition, returns and evidence to be submitted to it, and to hear and determine the case presented in such petition, and to certify its decision to the governor."

This jurisdiction necessarily draws to itself the right to hear and determine all questions touching the regularity and legality of the acts of the officers, or persons conducting the election, and making and certifying the returns thereof. It may be, and upon, a proper case made, it is required to re-examine all, or such parts of the election returns in said circuit, as it may deem necessary, and, if errors be found therein, to correct them according to the law and the truth. While its authority is thus ample, it will not fail to remember that all officers and other persons engaged in conducting said elections, or in making the returns and certificates of the result thereof, as required by law, are, in this Court en-

titled to the legal presumption that they acted in accordance with the law, until the contrary shall be specifically alleged, and fully proved.

The motion of Respondent to quash, brings up for consideration and determination the legal questions arising upon the face of the said petition, notices and specifications, as well to the legal sufficiency thereof, as to the right of the Contestant to rely upon his said new notice and specifications, given to the Respondent after the expiration of the sixty days next after the election, and after the service of the original notice and specifications.

First in the order of inquiry is the question—does the 11th section of chapter 6 of the Code of West Virginia, authorize the Contestant to give to the Respondent the new notice and specifications, of newly discovered facts, filed in this case?

The provisions of the said 6th chapter of the Code, must settle this question, it is merely one of construction

It is evident that in every contested election provided for in the 11th section, it was intended that it should be commenced and ended within a comparatively short space of time; and that it was not intended to permit an incumbent to hold his office much beyond the limit of its constitutional term, and thus enable him to carry on a protracted and dilatory contest with the person certified to have been elected to that office.

It is provided by section 2 of chapter 6 of the Code, that a contest with a member of the house of delegates, must be commenced within twenty-one days, and with a member of the senate within forty days, next after the election; and by the 11th section it is further provided, that a contest with a governor, secretary of the state, treasurer, auditor, attorney general, judge of the supreme court of appeals, or of a circuit court, must be commenced within sixty days after the election. In each instance, the period within which the contest is to be commenced is enlarged in proportion as the party

whose right is to be contested, was elected by the voters from a small or large district.

A party who desires to contest the election of a judge of a circuit court, is required to give notice, with specifications, to the party whose right is contested wthiin sixty days next after the election; the return notice of the respondent must be given to the contestant within thirty days after the service of his notice upon respondent; and the taking of all depositions must be concluded within forty days after the service of said return notice. "In other respects, the regulations contained in chapter 6 respecting contests for seats in either branch of the legislature shall be observed, as far as practicable."

By section 4 of chapter 6 of the Code, it is expressly declared, that, in contests respecting seats in the legislature, "If new facts be discovered by either party after he has given notice as aforesaid, he may give additional notice or notices to his adversary, with specifications and affidavit as above prescribed." The contestant in a judicial contest, needing all the time allowed by the law to collect the facts of the case, may postpone the service of his notice of contest until the sixtieth day after the election; and the the respondent may in like manner and for a similar reason, delay the service of the return notice until the thirtieth day thereafter. To deny the contestant the right to serve a new notice of facts discovered after the service of his original notice, and after the expiration of said sixty days, might place him in a very great degree at the mercy of the respondent. The new facts or some clue to the discovery of them, may, for the first time, be disclosed by the return notice itself, and to deny the right, under such circumstances, might be equivalent to a total denial of justice to the contestant.

As all the depositions are required to be taken within forty days next after serving the return notice, and as section 8 of chapter 6, declares that neither party shall have the benefit of any deposition, unless taken upon reasonable notice to the adverse party, it cannot be per-

ceived how material injury or injustice could thereby be done to the respondent. I am, therefore, of the opinion that new notices with additional specifications of new facts, discovered after the service of the original notice and specifications, and after the expiration of said sixty days, may be given by the contestant within the forty days allotted for taking the depositions—subject always to the limitation necessarily implied in sections 5 and 8, of chapter 6, requiring that all depositions in support thereof, shall be taken upon reasonable notice to the adverse party. But in every such instance, it must appear by proper averments that the facts relied on to authorize the giving of the additional notice or notices, are new facts; and were discovered after the service of the original notice ; and that they are such as the party could not have learned at that time by the exercise of due diligence; and that they are also material and relevant to the main question in controversy.

The petition filed in this Court, is addressed to the governor of the state; and sets forth the grounds of contest; and exhibits, as part thereof, the said original notice and specifications; and prays that a special court may be convened according to the 13th section of chapter 6, for the trial thereof; for the production of the ballots, poll books and inspectors certificates for the various counties; and for general relief, in accordance with said notice.

The petition should have been addressed to this Court, and not to the governor. It ought not to have contained any prayer for relief, beyond what this Court is authorized to afford; which is confined to the duty of certifying to the governor which of the parties to the contest had been elected to the office of judge or that no legal election therefor had been held in the said circuit.

Before the Contestant could rightfully invoke the authority of the governor to convene the special court provided by the 13th section of chapter 6, and procure testimony to be used before it, on the trial of the contest,

85

it was necessary that he should file with the governor in his office, a petition with copies of his grounds of contest, notice and specifications, as the basis of his action in convening this Court. Such petition must remain in the governor's office, for without it, he could have no evidence upon which to base or justify his official action.

The petition of the Contestant, containing, as it does, matters not properly addressed to this court, will not for that cause be held bad, but the irrelevant matters must be treated as surplussage. The sufficiency of this petition, embracing, at it does, the grounds of contest and the original notice with the fourteen specifications thereto annexed, must be determined by the principles of law established in similar cases of contest in other states, as modified and controlled by the particular provisions of the Code of West Virginia.

Many of the provisions of the law in regard to the manner of holding and conducting the elections and counting the votes and certifying the result, must be held to be directory only, and intended to point out to inexperienced and ignorant persons, who are sometimes necessarily called upon to act as election officers, a plain, easy and direct way by which they are to attain the great end of their creation, viz: To ascertain the true result of the election. When the true result of a legal election has been ascertained, or can be ascertained, by the officers charged with the performance of this duty, no irregularity, mistake or even fraud committed by any of the officers conducting the election, or by any other person, can be permitted to defeat the fair expression of the popular will as expressed in said section. In the case of the People vs. Cook, 8 N. Y. 67, it was held by the Court of Appeals of that State, that "The rule was well settled, that statutes directing the mode of proceeding by public officers are directory, and are not regarded as essential to the validity of the proceedings themselves, unless it be so declared in the statute." Judge Cooley, in his "Constitutional Limitations," p. 75, commenting on the de-

cision of the Court in People vs. Cook, says: "The Court was right in holding that the election was not to be avoided for a failure in the officers appointed to conduct it, to comply in all respects with the directions of the statute."

The reasons on which this well established rule is founded, are so clearly set forth in Cooleys Con. Lim. p. 617, that they may with propriety . be here repeated : "As the execution of these statutes must very often fall into the hands of men unacquainted with the law, and unschooled in business, it is inevitable that mistakes shall sometimes occur, and that very often the law will fail of strict compliance. Where an election is thus rendered irregular, whether the irregularity shall avoid it or not must depend, generally, upon the effect the irregularity may have had in obstructing the complete expression of the popular will, or the production of satisfactory evidence thereof. Election statutes are to be tested like other statutes; but with a leaning to liberality, in view of the great public purpose which they accomplish; and except where they specifically provide that a thing shall be done in the manner indicated, and not otherwise, their provisions, designed merely for the information and guidance of the officers, must be regarded as directory only; and the election will not be defeated by a failure to comply with them, provided, the irregularity has not . hindered any who were entitled (to vote,) from exercising the right of suffrage, or rendered doubtful the evidences from which the result was to be declared." In People vs. Cook, the Court announced the rule in regard to irregularities to be, that "Any irregularity in conducting an election, which does not deprive a legal voter of his vote, or admit a disqualified voter to vote, or cast uncertainty on the result, and has been occasioned by the agency of a party seeking to derive a benefit from it, should be overlooked in a proceeding to try the right to an office depending on said election." See also 16

.1873.
January
Term.

Loomis
v.
Jackson.

Mich. 283; 29 Ills. 72; 19 Barbour 540; Chadwick *vs.* Melvin, Brightly L. C. E. 256.

The following irregularities, have been held to be immaterial: where the inspector acted as clerk; and where more than the lawful number of inspectors acted at the election; Brightly L. C. E. 452: where a clerk assumed the place of an absent inspector 1 Brewster 69: where one of the clerks during the election became so much intoxicated as to be unable to continue his labors, and another person was called, who acted in his place, without being sworn, until the regular clerk was able to resume his labors; see Boileaus case, Brightly L. C. E. pp. 268, 452: where the election officers, being illiterate, called in a person who was not an election officer or clerk, to take the ballots from the box and read them to the tellers, at the invitation of the election officers; see Sprague *v.* Norway, 31, California 175; the omission of the inspectors, while counting the votes, to take out the ballots deliberately from the boxes, and read aloud the names printed thereon: 2 Pars. 515; and lastly, the omission of the judges or clerks of an election to sign the poll books, to fill up blanks in the caption, or to state the aggregate number of the votes all which may be corrected by parol, and when corrected, used as competent evidence of the result of the election; 19 Ohio St. R. 189.

It may therefore be safely affirmed, that no irregularity, or even misconduct, on the part of the election officers, or other persons, will vitiate an otherwise legal election, unless the result thereof has been thereby changed, or rendered so uncertain as to make it impossible to ascertain the true result. A different rule would make the manner of preforming a public duty, more important than the duty itself. As nothing can be proved, that is not alleged, it follows that a contestant, either in his petition or notice of the grounds of contest and specifications, must by direct averments substantially shew what was the result of the election as declared by

the returning officers, and in what manner and to what extent that result will be affected by the errors, irregularities and illegalities complained of in the specifications. And unless it further appear upon the face of the petition, notice or specifications, that the result of said election will be so changed by proof of said allegations, as to overcome the majority of the person who has been declared duly elected, or to shew that it is impossible to ascertain the true result, it will be the duty of the court, on motion, to quash the same. But, inasmuch, as the petition filed in this case. does not contain any averment as to what the result of said election was, the question as to the effect of such an averment in the petition, does not arise, and is not determined. See Cong. Elec. Cases 161, 383, and Brightly L. C. E. 352, 356 and also 323, 324.

This principle was fully recognized by the court in Kneass' case, 2 Pars. 558, where it held, "That every petition alleging an undue election and false return, must be complete in itself, and must state such grounds as would, if supported by proof, be cause for rendering it void, or declaring another elected; and when some of the grounds alleged are irregularities, which if proved would not be sufficient cause for setting aside the election, such specification will be stricken out on motion." Leaving, for the present, the consideration of the foregoing cases arising in other states, where these questions were carried at once from the officers conducting the elections into their common law courts, by petition or information in the nature of a "writ of quo warranto," let us return to a careful examination of our own Code which by special provisions, enables us to correct all irregularities, mistakes and even frauds committed or caused at or after the election by the election officers or other persons, without being driven to the necessity of making a formal contest.

By section 18 of chapter 3 of the Code it is provided, hat "no error or mistake in the designation of the

office or person shall vitiate any ballot, or cause it to be rejected from the count, if it be manifest what was intended by the voter."

By the 64th section of chapter 3 it is further provided, "That no illegal vote received, nor legal one rejected at any voting place, shall cause the return taken at such place to be set aside for that cause, but the fact may be shown by proper evidence before the final judges of the election, and the return in these respects corrected." These two provisions remove many of the difficulties that without them would be constantly arising.

By a careful examination of secs. 62, 65 and 66 of Chap. 3 of the Code, it will be perceived that the boards of supervisors in the several counties, are charged with the performance of many of the highest duties that can be devolved upon any judicial tribunal, viz: to procure correct returns and ascertain the true result of all elections in their several counties.

They are required, "To convene at the court house on the 5th day after every election held in their county; and their clerk is required to lay before them the ballots, poll books and inspectors certificates of the results of the election at the several voting places; they may, if they deem it necessary, require the attendance of the inspectors or other persons present at the election, and examine them under oath respecting the same; they may demand the production of the poll books and certificates filed in the recorder's office; and also make such other order as shall seem proper to procure correct returns and ascertain the true result of the election in their county; they may adjourn from time to time; and open and examine the sealed packages of ballots, and recount the same." Having done all these things, or such of them as they deemed necessary to enable them to perform these judicial functions, they are, by the 66th section of chapter 3, further required, under the regulations prescribed in the 62d section, "to carefully ascertain the result of the election in their several counties, for judge,

&c., and cause to be signed by their presiding officer and clerk the certificates thereof specifically prescribed in said section."

A grant of authority thus extensive to call and examine witnesses, to compel the production of papers, to open, inspect, examine and count the ballots, and to make all orders deemed necessary to enable them to discharge these duties, and to continue their examination by adjournments from time to time, until they have ascertained the true result of the election, indicates, in the strongest possible manner, the intention of the legislature to create a judicial tribunal, whose determinations upon that subject should be entitled to the force and validity of a judgment, until impeached on the grounds of mistake, corruption or fraud precisely averred and clearly proved. Taken together, these provisions of the Code clearly shew that they were intended to avoid the necessity of resorting to contested elections of judges and state officers, except in cases of mistake, corruption or fraud, by providing the people with a tribunal essentially and peculiarly their own, always accessible to them, to the judgment of which, in the first instance, the returns of all elections are submitted for examination and correction.

It is also clear, to my mind, that the legislature further intended that no legal election should be set aside upon the ground of illegal votes received, or legal votes rejected, or any ambiguity in the ballots as to the designation of the person voted for, or of the office intended.

As all the ballots, poll books and inspectors certificates from all the voting places in every county, are required to be laid before the board of supervisors of said county, who are authorized to examine, inspect, hear proof of, and correct the same before they ascertain and certify the "true result," it is a just and reasonable presumption of law, that all errors, irregularities and illegalities committed at the election, or existing at the time the election returns are examined by the boards of super-

1873.
January
Term.

Loomis
v.
Jackson.

visors, must, in the absence of averments and proof to the contrary, be taken and held to have been corrected by said boards, and excluded from certificates of the correct result.

As a necessary deduction from this principle, it follows that any specification which alleges errors, irregularities, illegalities or malconduct on the part of the officers or other persons conducting the election, committed before the action of the board of supervisors was had thereon, must be held. insufficient, unless it is further alleged that the said errors were carried into, and formed a part of the result of the election as certified by the board of supervisors.

Let us now apply these principles to the petition, notices and specifications filed in this case by the Contestant, and now submitted to the Court on said motion to quash.

The Contestant relies upon three grounds of contest, in substance as follows :

"1st. He was a candidate for the office of judge of the circuit court for the fifth judicial circuit, and was voted for as such at the election held therein on the 22nd day day of August 1872; and that he received a higher number of votes than did the respondent James M. Jackson; and he is entitled to have same allowed to him, and, in consequence thereof, to be commissioned judge in the said circuit."

"2nd. In divers precincts in the several counties composing the said circuit, there was such malconduct at the voting places therein by the officers conducting the election, and such interference by others suffered at the polls, as to preclude a fair expression of the will of the legal voters, voting and offering to vote, as to render it impossible to determine at such voting places who was the choice of said voters for said office of judge ; notwithstanding which, the election officers then and there acting, whose duty it was to declare the result of said election, declared the same in favor of said James M.

Jackson, wrongfully and to the prejudice of the Contestant."

"3rd. At the court house of Wood county in Parkersburg, when the inspectors and clerks in the presence of the supervisors were counting the ballots, they found, in two instances, two ballots folded together; and the names on each were the same, and Contestants name was on all of them, as the person voted for as judge ; all of said ballots so found folded together were destroyed by said officers, and none of them was counted; and said Jackson was present, directing them to be destroyed ; therefore, the Contestant claims that, after the certificates of the several boards of supervisors shall be corrected in the manner set out in his several specifications, these ballots so destroyed would of themselves change the result of the election."

It will be perceived that these grounds of contest fail to allege the number of votes which the boards of supervisors of the several counties certify were given to the Contestant, or to the Respondent, or what majority of the Respondent was to be overcome by the Contestant. In other words, the actual result of the election does not appear. Unless some other part of the record of the Contestant's case as now presented to the Court, supply this necessary fact, and also that the result of the election will be thereby changed in favor of the Contestant, or that the election itself was illegal, the motion of the Respondent to quash must be sustained.

### Of the specifications,

The 1st sets forth; "That the board of supervisors of Pleasants county certified to the Respondent 387 votes, and to the Contestant 345 votes ; whereas, in Grant township in said county, the Contestant received five votes more than he is certified there to have received; which were not counted to him, as appears by the poll books, tally sheets and ballots at that voting place."

86

This specification is defective, because it does not thereby appear that the said error of five votes was carried into the result as certified by said board of supervisors. As such an error was apparent upon the papers laid before them on the 5th day after the election, and as it became their duty to correct it by excluding it from their certificate of the result, it is not to be inferred by this Court that they failed to correct it, especially when the Contestant declines to allege it.

The 2nd specification sets forth; "That in McKim township in Pleasants county, during the election, before the ballots were counted, the ballot box was opened, and one Hanson Pointer took out of it nineteen ballots, more or less; that he was not an election officer, and he had no authority to do so ; that one Simpson Jones, who was the supervisor then and there conducting said election, acted in the twofold character of clerk and supervisor of said election contrary to law ; and that said election at that place was conducted generally in such manner as to repel the presumption that the ballots were not tampered with. For these causes he asks that the poll taken at that place be set aside."

All these acts may have been perfectly innocent, and the election, for aught that appears, may have been perfectly fair. The act of Hanson Pointer, in taking a ballot from the box, was an impertinent interference with the election, and deserved rebuke. But how many ballots were so taken out? "Nineteen, more or less!" This may be equally true when said of one or one thousand ballots. The act is a mere irregularity which in no manner affected the result of the election. Was the ballot taken out by Pointer restored to the box ? If not, the board of supervisors could have corrected it, and it was their duty to do so. It is not alleged they did not do so. It is therefore to be presumed they did. The Court has not been able to find any law forbidding the supervisor, or any of the inspectors, conducting the election to act as clerk. It may have been impossible to obtain

a suitable clerk; and a legal election is not to be permitted to fail for want of a clerk. See People *vs.* Cook, Brightly L. C. E., 441, 442. For these reasons, I am of opinion that this specification is fatally defective.

The 3d specification contains three clauses. The 1st alleges; "That the board of supervisors of Calhoun county certified that Respondent received in that county 469 votes, and Contestant 186 votes; which was erroneous, because in Washington township in said county, the inspectors counted Respondent two votes more than he received." The 2nd clause of this specification alleges; "That the inspectors of Sherman township counted to the Respondent ten votes more than he received, and that both of said errors were carried by the board of supervisors into their certificate, and formed a part of 469 votes." The 3rd clause alleges; "That in Washington township in said county, Contestant received 13 votes, and that the inspectors of the election at that place counted to him only 9 votes, being four less than he received; and that the board of supervisors did not include said four in said 186 votes." It does not allege any error or mistake in the judgment and consequent action on the part of the election officers, or of the board of supervisors, in not counting said four votes; they may have been illegal votes, which fact, if known to the said officers, or board, would cause them to be rejected from the count; and for aught that appears they acted rightly in not counting them. In the absence of such an allegation, this Court is bound to presume that their action was correct. For these causes said 3rd clause is defective.

The said 1st and 2nd clauses of this specification would be sufficient but for an objection which, in the opinion of a majority of the Court, underlies the whole case.

The 4th specification alleges only; "That in Sheridan township in Calhoun county, on the day of the election, and before the poll was closed, the ballot box was opened

several times, and the ballots handled, examined and tampered with by unauthorized persons; and other misconduct, and irregularities were practiced to such an extent as to invalidate the poll at that place."

It is not alleged or pretended, that there were any ballots handled except those in the ballot box, or that any ballot was abstracted, lost or distroyed, or that any spurious ballots were introduced. It charges only an irregularity, proper for the correction of the board of supervisors. If any error in the result was occasioned thereby, it was their duty to correct it. It is not pretended they did not do so. For these causes this specification is insufficient. See 29 Ills. 72, 1 Brewster 69. Brightly L. C. E. 268, 452.

The 5th specification charges; "That at the voting place in Grant township in Ritchie county, the persons who actually conducted the election at that place, were persons other than the legal officers, for conducting the election at that place, and that such persons were not sworn."

It does not, therefore, follow that the election was not fairly conducted, or that the persons referred to were not authorized by law to conduct the election. Section 9 of chapter 3 of the Code, expressly authorizes persons other than the election officers to conduct elections in the absence of these officers. This whole subject was necessarily considered and acted upon by the board of supervisors, and their action is not impeached.

The specification must therefore be held insufficient. See Boileaus case, Brightly L. C. E. 268, 452.

The 6th specification charges; "That at Burning Springs township in Wirt county, Jasper Gibson and George Morgan who were minors at the time of the election, voted for Respondent."

And specification 7 charges; "That at the election in Parkersburg, six other persons who are named, who were not qualified voters, voted for Respondent."

1873.
January
Term.

Loomis
v.
Jackson.

Both of these last two specifications are fatally·defective, because the 6th does not allege that the two illegal votes were counted to Respondent, either by the inspectors of the election, or by the board of supervisors of Wirt county; and because the 7th, in like manner, fails to allege that said six illegal votes were counted to Respondent by the board of supervisors of Wood county. This Court will not presume they were so counted, as the Contestant has failed to allege it.

The 8th specification charges; "Upon the personal knowledge of Contestant, that at the court house, the voting place in Parkersburg township in Wood county, after the polls were closed, while the ballots were being counted, and before the count was concluded, the respondent James M. Jackson did take hold of, handle and displace a great number of said ballots before the same had been fully counted; and claims for these causes, that all the poll received by Respondent at that place be set aside, because said acts were improper, unwarrantable and illegal; leading to well grounded suspicions, of unfairness, and operated to his prejudice."

The acts here complained of are; that "Respondent took hold of, handled and displaced" the identical ballots which had been voted at that place; and the effect of the acts was only to "lead to well grounded suspicions of unfairness."

"Suspicions of unfairness," however well founded, are not facts. If any ballot was abstracted, altered, destroyed or exchanged, or.if any other act was then and there done by Respondent, calculated to produce a false result, why not allege it? The specification being made by Contestant upon his personal knowledge, it is but just to presume that it would have been alleged if it had existed; and according to the well established rules of pleading, the court must presume that what is not alleged does not exist. Did the Contestant by this specification intend to charge that the Respondent had been guilty of

a fraud upon the election by handling the ballots? If so, a recurrence to the rules of pleading will shew that it is insufficient for such a purpose. Fraud is never to be presumed it must be particularly alleged, especially when the act charged as a fraud may be innocent. See 1 Randolph, 250; 3 Randolph, 507; 44 Barbour, 169; Hillard on Remedies for Torts. 170. The authorities fully warrant me in announcing the rule in such cases to be, that in pleading a fraud, the pleader must by apt words allege in his pleading every act, fact and intent which necessarily enter into, and constitute that partciular fraud; and these essentials must be alleged with such precision and certainty as to exclude every construction except the fraudulent and wrongful purpose complained of; and if, from the face of the pleading, it is doubtful whether the allegations do in fact amount to that particular fraud or not, it is not well pleaded. As a charge of fraud this specification is utterly insufficient, and, divested of this character, it descends to a mere insinuation, and dwindles into an irregularity from which it is not pretended any change was caused in the result of the election at Parkersburg. This specification, for the reasons heretofore given, and for the additional reason that it charges an irregularity which was subject to examination and correction by the board of supervisors, whose action thereon is not impeached, must be held insufficient.

Specification 9, alleges in substance the same irregularity and no more, and is defective for the same reasons.

The 10th specification alleges; "That at Parkersburg after the polls were closed, and the ballot box opened by the inspectors, they did not take the ballots out of the box "one at a time;" but unlawfully took them out of the box, culled and separated the ballots into different parcels and laid them out upon a table, before the inspectors read from said ballots the designation of the offices to be filled, thereby increasing the opportunities for said

1873.
January
Term.

Loomis
v.
Jackson.

ballots to be tampered with; and in consequence of such acts of the election officers, the Contestant asks to set aside all of Respondents poll at that place, of 665 votes."

To grant such a request, for such a cause, would establish a principle which would place in the hands of election officers the power to defeat the fair expression of the popular will at any and every election; it would be to set a higher value upon the manner of counting the ballots, than upon the ballots themselves; and it would operate to defeat a large proportion of the elections required by law to be held.

This specification presenting a mere irregularity, not affecting the true result of the election, must be held insufficient.

The 11th specification contains two clauses. The first alleges; "That at the election in Parkersburg, the inspectors, in counting the ballots, found in two or more instances, two or more ballots folded together on which the names were the same, and Contestant's name was on each and every of them as the persons voted for as judge for said 5th circuit; and that they destroyed all, and counted none of them; and that Respondent was present directing the same to be done." This was such an error as the board of supervisors could and should have corrected. It is not alleged that they did not correct it; nor is their action impeached or even questioned; neither does it affirmatively appear that said error was carried into and formed part of the result, certified as the true result of the election in Wood county. The second clause in this specification sets forth that: "After said inspectors of said election at Parkersburg, had taken from the ballot box, and counted as many ballots as corresponded to the number of names on the poll books, they found in the box three ballots in excess, on each of which was Contestant's name as the person voted for as judge, which the inspectors destroyed by the direction of Respondent; and he claims that these three ballots, thus found in excess, might have been counted for Con-

testant, but for the action of the Respondent in the premises, and the illegal manner of taking the ballots from the box as hereinbefore stated; and Contestant further claims that the destruction of said ballots, as above stated, would of itself change the result of the election after the same should be corrected of the errors set forth in his foregoing 1st and 3rd specification."

It was the duty of the inspectors to destroy the three ballots in excess, found remaining in the ballot box, without unfolding or opending them, or suffering any person to learn their contents. The speculation, as to what other ballots might have remained in the box, presents an impossible, and therefore useless inquiry; and the claim resting thereon must necessarily fall with it. For these causes, the whole specification is insufficient.

The 12th specification states that; "After the ballots cast at all the voting places in Wood county, had been by the several inspectors enclosed in sealed envelopes properly endorsed, returned and delivered to the clerk of the board of supervisors of said county on the 28th day of August 1872, and before the said board, then and there convened, had examined said inspoctor's certificates, laid before them by their clerk, the Respondent caused the sealed package of ballots cast at Parkersburg, to be broken open and examined, and the ballots therein contained to be handled and misplaced, without a majority of the said board of supervisors being present at the time and place when and where they were so broken open, examined, handled and misplaced; and that only two of said supervisors were present at the time said acts were done; and that they and Respondent, at his procurement, did unlawfully break open the sealed pack- of ballots, in number between 1000 and 2000; and that, after said ballots had been so handled, examined and meddled with, they were left in a loose, unsafe condition, and were not again sealed up, along with the original envelope, in another envelope, which Contestant avers, was to his prejudice in the premises; and also, that

said two supervisors and Respondent, in counting said ballots, ascertained that Respondent had received a less number of votes for the office of judge, than the inspectors of Parkersburg township had certified, although the said two supervisors reported to the full "board," that the certificate of the inspectors was correct ; for which causes, Contestant claims that Respondents whole poll in Wood county of 1877 votes, may be set aside."

It might, perhaps, be sufficient to say that this specification is fatally defective, because, like many others, it fails to shew or impeach the action of the board of supervisors in regard to the said returns.

It was their duty "to procure correct returns and ascertain the true result" of the election in Wood county; they were then and there convened, on the 5th day after the election, for that purpose ; their clerk had laid before them the poll books, ballots and inspectors' certificates ; they had been informed by two of their own body, that the sealed package of the ballots cast at Parkersburg had been, by them, broken open and counted; that by that count they had ascertained a perticular result; they had unlimited power to procure testimony, examine witnesses, and they thereupon ascertained a result, which they judicially determined was the true result of the election in Wood county; and which, in obedience to the requirement of the law, they caused to be certified to the governor.

Under these circumstances, this Court cannot presume, in the absence of any averment of facts tending to impeach their action, that the result which they ascertained and certified, was not the "true result" of the election in Wood county.

But if said specification was not defective for the causes which I have pointed out, it is liable to another exception which is necessarily fatal, viz : that every allegation therein contained may be true as stated, and yet all the acts complained of may be not only innocent, but con-

87

sistent with the law and the honest discharge of official duty, and the exercise of private right. It is the right of every voter to appear before the board of supervisors, while sitting as a tribunal to ascertain the true result of an election, and, upon his motion made to them, to procure the sealed packages of ballots to be broken open and counted; which must necessarily cause them "to be handled, examined and misplaced."

It is the right of the board of supervisors, if they determine to recount the ballots, to appoint a committee of their own number, less than a majority of the whole, to perform that duty, and report the result of their examination and count, to the full board, which may adopt it as their own act; and, unless the board otherwise determine, any person desiring to do so may be present and witness the recounting of the ballots. Acts which may thus bear an innocent construction, and which, as set forth in this specification, almost demand such construction, cannot, in my opinion, be held sufficient to defeat the fair expression of the popular will] as expressed in a legal election.

It is not deemed necessary in this opinion to refer to the remaining portion of this specification, which relates, principally, to a contested election between two gentlemen for the office of justice in Parkersburg, further than to remark, that as a specification it is wholly immaterial, and as an argument irrelevant, and, therefore, useless.

The 13th specification charges; "That at Volcano in Wood county, the officers conducting the election failed and omitted to have entered, by their clerks, the contents of the ballots, as they were read on tally papers by suitable marks made opposite to, or under the names of the persons voted for as judge."

This specification is defective, because it charges a mere irregularity, viz: that the inspectors ascertained the true result without tally papers! What of that? It was the correct result. It is not alleged or pretended to have been incorrect. It must be presumed correct until the contrary is alleged.

The 14th specification charges; "That at Burning Spring township in Wirt county, the polls were closed at 4 o'clock and before sundown, whereby numbers of voters were prevented from voting at that place, to the Contestant's prejudice; and that during the time the votes were being taken, the ballot box was at three different times opened, and the vote counted, to his prejudice."

This charges a mere irregularity; it is not alleged how, or to what extent the result was affected by it. How many voters were thus prevented from voting? Who were they? How would they have voted? Did all, or any of them offer their votes before sundown? None of these facts being alleged, it is impossible to perceive how the result of the election at that place would have been thereby changed. The specification is, therefore, insufficient.

We are now brought to consider the matters sought to be introduced into the record by the Contestant, by his additional notice and specifications and to determine whether they are of that character indicated by the 4th section of 6th chapter of the Code.

The Contestant by his new notice informed the Respondent that after the service of his original notice, he had discovered the new facts particularly set forth in the following additional specifications: The first additional specification sets forth; "That at the general election held on the fourth Thursday of October 1868, Contestant was elected judge of the circuit court for the 9th judicial circuit of this State, and was duly commissioned as such judge for the term of six years from the first day of January 1869; that said ninth circuit embraced the counties of Wood, Wirt and Pleasants, now embraced in said 5th circuit; that the constitutional convention which was called for the purpose of proposing amendments to the constitution of the state, in providing for an election of officers on the 22nd day of August 1872, transcended the

powers delegated to it by the legislature, and that the election was therefore illegal and void."

Were these facts newly discovered by the Contestant? If so, wherefore was he a candidate for the exalted position of judge of the circuit court of the 5th judicial circuit at the election on the 22nd August 1872? Why is he a contestant before this Court, called into existence by his own acts, founded upon the recognition of these very facts?

The answer to these questions is, that these alleged new facts were old well known facts of which the Contestant, by virtue of his office of judge of said ninth judicial circuit, was bound to take official notice. Not being new facts discovered after the service of the original notice, they cannot be the subject of a new notice under section 4 of chapter 6.

I have had no difficulty in reaching the following conclusions upon the constitutional questions presented in this specification, viz:

First. That a constitutional convention lawfully convened, does not derive its powers from the legislature, but from the people.

Second. That the powers of a constitutional convention are in the nature of sovereign powers.

Third. That the legislature can neither limit or restrict them in the exercise of these powers; and

Fourth. That the legality of the election for officers held on the 22nd day of August 1872, after the ratification of the new constitution and schedule, is not to be called in question by any court created or continued by the provisions of that constitution. When it is proposed that this Court shall determine that the sovereign power of this state cannot lawfully commission a judge of its own creation, it is invited to commit judicial suicide. Courts sit to expound the laws made by their government, and not to declare that government itself an usurpation.

Additional specification 2 sets forth; "That in Clay town-

1873.
January
Term.

Loomis
v.
Jackson.

ship in Wirt county, the officers of the election at that place suspended the voting about one o'clock, P. M., opened the ballot box and counted the ballots; after which, other votes were received, and in this manner the ballots were were counted, the voting suspended and resumed, and the polls closed before sundown."

Additional specification 3, charges; "That the election officers at Newark township in Wirt county, were not sworn according to law before entering upon their duties, and not until the poll books were returned to the clerk of the board of supervisors; and that the polls were closed before sundown; and the ballot box was opened and ballots examined before the voting had ceased."

Additional specification 4 charges; "That at the several voting places in Calhoun county, especially at Richardsonville some of the officers conducting the election by previous arrangement with Respondent and with his assent, concealed and destroyed ballots (tickets) that had on them the name of Contestant, as the candidate for judge, so that the same could not be furnished to the voters who desired to vote the same."

Of all the last three additional specifications it may be said, they all fail to shew that any of these acts deprived any legal voter of his vote, or that any illegal votes were received; or that any uncertainty was thereby cast upon the result; or that the boards of supervisors improperly approved the returns, if any errors existed therein. Being therefore wholly immaterial, they must be held insufficient. They are such facts as the Contestant could have learned by the exercise of due diligence before giving his original notice.

There remains to be considered the last additional and supplemental specification, which states; "That at said election in Washington township in Pleasants county, the poll books do not shew that any person was voted for, for the said office of judge at that place; nor was there on said poll books any certificate made by any of the officers conducting said election, that any person

received any votes for said office of judge. Yet the board of supervisors of Pleasant county, certified that the Respondent received in said township, for the said office, 87 votes, and Contestant 65 votes."

This specification contains no new facts; on the contrary it is a fact that was apparent upon the face of the poll books, and could have been learned by the exercise of due diligence before the service of the original notice; indeed it could scarcely fail to be known to any person interested in the result of the election. But if it was a newly discovered fact, the specification discloses no irregularity, or error, in the action of the board of supervisors in regard to it. It was their duty to ascertain the true result of the election at that place, and in doing so, it was their duty to count and certify to Respondent and Contestant the number of legal ballots actually cast for them, whether the name of the office appeared upon the poll books or not, if there appeared upon the ballots themselves the designation of the office for which they were cast. Nothing being alleged against the action of the board of supervisors, it cannot be presumed that they acted improperly, or that they did not ascertain the "true result." This specification is, therefore, insufficient.

I am therefore of opinion that the additional notice of the Contestant, with all of said last mentioned five specifications of newly discovered facts, must be excluded from this case, because it sufficiently appears, from the face thereof, that at the time of the service of the original notice and specifications on the Respondent, they were all well known to the Contestant, or could have been known by him, "by the exercise of due diligence;" and the said facts themselves do not, and cannot affect the general result of the election in said circuit.

From this examination of the case made before this Court by the Contestant, it is manifest that his petition, original notice and specifications taken separately as parts or collectively as a whole, fail to allege and shew

what was the actual result of the said election for judge in said 5th circuit, either by setting forth the votes cast for Contestant and Respondent, or the majority, certified to Respondent, sought to be overcome by the Contestant.

For this reason, which applies to the whole case, as well as for the reasons hereinbefore given which apply to the particular specifications, I am of the opinion that the motion of Respondent to quash the original notice and specifications must be sustained.

It only remains to consider the motion made by the Contestant to amend the original notice and specifications, after the motion to quash had been sustained, by filing as parts thereof copies of the certificates of the result of said election, made by the several boards of supervisors of the counties composing said 5th circuit.

This is a proposition that the Contestant be now permitted to make an entirely new case in this Court; to tender to the Respondent a new issue, upon which he could not have been required, or even permitted to take testimony in the country; an issue upon facts of which he had no previous notice; and to require him upon this new issue to proceed at once to trial.

If it was perfectly clear that this Court possessed the general powers to amend which are incident to courts exercising a general common law jurisdiction, it would hesitate to allow such an amendment to be made at such a time and under such circumstances.

This Court is one of limited jurisdiction, confined to the trial of one single cause, and becomes *functus officio* as soon as that cause is determined. It possesses no inherent power, and it can be directed in the exercise of its authority only by the provisions of the statute creating it.

Possessing no common law jurisdiction, it cannot thence derive the incidental power of amendment. The statute creating it does not expressly grant to it such a power; but on the contrary, by reserving to the parties the right to supply defects to a certain limited extent,

upon certain conditions and within a specified time, that power, by very strong implication, is withheld from this court. The 8th section of chapter 131 of the Code, authorizing the amendment of the pleadings in certain cases, cannot apply to this Court; for the courts there referred to can impose conditions upon the party asking leave to amend, by payment of costs, or granting a continuance, if thereby made necessary, which this Court cannot do.

I am, therefore, further of the opinion that this Court cannot allow the amendment asked for, to be made; and that said motion must be overruled.

As nothing in this case now remains but the petition of the Contestant, unsupported by the notice of the grounds of contest and specifications required by law, I am of opinion that the said petition must be dismissed.

SMITH, President, concurs in the foregoing opinion.